**Denver Association for Retarded Children, Inc., The Denver Board for the Mentally Retarded and Seriously Handicapped, Inc. and Donald E. Combs v. School District No. 1 in the City and County of Denver, State of Colorado, Robert L. Crider, Theodore J. Hackworth, Jr., James C. Perrill, Frank K. Southworth, Bernard Valdez, Kenneth R. Gher, Louis J. Kishkunas, Omar D. Blair and Katherine W. Schomp**

## No. 26497

**Denver Association for Retarded Children, Inc., The Denver Board for the Mentally Retarded and Seriously Handicapped, Inc. and Donald E. Combs v. School District No. 1 in the City and County of Denver, State of Colorado, Robert L. Crider, Theodore J. Hackworth, Jr., James C. Perrill, Frank K. Southworth, Bernard Valdez, Kenneth R. Gher, Howard Johnson, Omar D. Blair and Katherine W. Schomp**

(535 P.2d 200)

Decided April 28, 1975.                    Rehearing denied May 19, 1975.

312

Steven L. Zimmerman, for plaintiffs-appellees and cross-appellants.

Henry, Cockrell, Quinn & Creighton, Benjamin L. Craig, Peter J. Wiebe, Jr., for defendants-appellants and cross-appellees.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This is an action in mandamus concerning the interpretation, application, and validity of 1971 Perm. Supp., C.R.S. 1963, 71-8-2(3)(a).[1] It was brought to compel the Board, Officers and Superintendent of School District No. 1 to comply with the above statute by paying over to the plaintiff Denver Board for the Mentally Retarded and Seriously Handicapped, Inc. (hereafter referred to as the "Board") amounts due the Board for the years 1972 and

---

[1]Now section 27-11-103, C.R.S. 1973.

1973. The trial court ordered the payments to be made, and we affirm in this respect.

In 1964, the General Assembly enacted what later became Article 8 of Chapter 71, C.R.S. 1963, entitled Community Centers — Mentally Retarded and Seriously Handicapped. 1965 Perm. Supp., C.R.S. 1963, 71-8-1, *et seq.*[2] By its provisions, the Department of Institutions was authorized to purchase services for mentally retarded and seriously handicapped persons through community incorporated boards. 1965 Perm. Supp., C.R.S. 1963, 71-8-2. The director of the Department of Institutions was obliged to require in turn that each community centered program be under the control and direction of a board of directors or trustees of a non-profit corporation, 1965 Perm. Supp., C.R.S. 1963, 71-8-3(2)(b).[3]

The General Assembly, however, did not fully fund the program. State contributions were limited to one-half of the cost of training programs not to exceed $500 per trainee. 1965 Perm. Supp., C.R.S. 1963, 71-8-2(1). The burden of the remaining cost was thus thrust on the community incorporated boards. However, 1965 Perm. Supp., C.R.S. 1963, 71-8-2(3), suggested that other governmental units such as counties, municipalities, school districts, hospital districts or state institutions of higher learning might purchase services from or give money or services to the community incorporated boards.

In 1971, the statute was amended to add to section 71-8-2(3) a formula whereby those school districts that did not choose to provide their own program for mentally retarded and seriously handicapped persons were required to provide to the community incorporated board the amount raised per pupil in "average daily attendance entitlement" in the district by the levy for the school district's general fund. 1971 Perm. Supp., C.R.S. 1963, 71-8-2(3).

The defendant school district did not make the full payments to the Board as required by the statute on the ground that the statute was unconstitutional. The parties have stipulated that if the statute is constitutional, the defendant school district owes the

[2]Now section 27-11-101, C.R.S. 1973.
[3]Now section 27-11-104, C.R.S. 1973.

Board an additional $84,891.83 for 1972, and $64,242.20 for 1973. In addition, if the full average daily attendance entitlement formula applies to five year olds, who would otherwise be enrolled in kindergarten programs, $37,771.14 is also to be paid over to the Board.

On December 5, 1972, plaintiffs demanded that the additional amounts be paid over to the Board, and on December 15, the School District, asserting the unconstitutionality of the statute, declined payment. The plaintiffs thereupon commenced this action.

In addition to the Denver Board, this action was brought by the Denver Association for Retarded Children, Inc., a non-profit corporation which represents the interests of mentally retarded and handicapped individuals within the City and County of Denver, and Donald E. Combs, a resident of Denver and a parent of a mentally retarded individual who has received educational services at Laradon Hall School for Retarded Children, an agency whose services are purchased by the Board.

After the complaint was filed, the defendants moved to dismiss the action on the ground that the statute was unconstitutional. The court denied the motion, holding that the defendants did not have standing to challenge the constitutionality of the statute. This defense was then included in the defendants' answer, and the court granted plaintiffs' motion to strike. Thereafter, the matter was tried to the court on the basis of the facts admitted in the answer, a stipulation of the parties, and the testimony of one witness. The court found for the plaintiffs and ordered the defendants to pay over the stipulated sum. The defendants have appealed on several assignments of error, and the plaintiffs have cross-appealed for attorney's fees and interest. We will deal separately with each of the issues raised.

I.

At the outset, defendants maintain that the Denver Association for Retarded Children, Inc. lacks standing to bring this action as a party plaintiff. However, the defendants concede that the standing of Combs, which went unchallenged at trial and was not questioned in the motion for a new trial, is not properly before this Court. In addition, the standing of the Board has not been

questioned below, nor is it raised on appeal. Therefore, we need not reach the question of whether the Association has standing since in this action for mandamus, there are parties with standing to assert all of the contentions raised.

## II.

However, the question of standing is critical to the school board's right to challenge the constitutionality of the statute. Their refusal to pay over the stipulated sum is predicated on the assertion that 1971 Perm. Supp., C.R.S. 1963, 71-8-2(3)(a) violates Article XI, Section 2, Article IX, Section 15, and Article IX, Section 2 of the Colorado Constitution. The plaintiffs assert, however, and the trial court agreed, that the defendants lack standing to challenge the constitutionality of the statute — that as a political subdivision of the state whose duty it is to carry out the educational policies of the state, the school district and officers thereof cannot question the constitutionality of a statute fixing their duties. The defendants contend in answer to this position that as officials charged with the disbursement of public funds, they have standing to assert the unconstitutionality of the statute prescribing the duty of disbursement. We do not agree with this position.

■ Basic to our discussion here, is the announced principle under present Colorado law that a political subdivision of the state, and the officers thereof, lack standing to challenge the constitutionality of a statute directing their performance. *Board of County Commissioners of the County of Otero v. State Board of Social Services,* 186 Colo. 435, 528 P.2d 244; *Board of County Commissioners of the County of Dolores v. Love,* 172 Colo. 121, 470 P.2d 861. This rule applies to school districts as well as to counties in that "the several officers charged with the supervision of the schools, from the state board of education down to the directors of the school district, are merely the instruments of the state government chosen for the purpose of effectuating its policy in relation to schools." *Hazlet v. Gaunt,* 126 Colo. 385, 250 P.2d 188, 191; *Newt Olson Lumber Co. v. School District,* 83 Colo. 272, 263 P. 723, 724; *Florman v. School District,* 6 Colo. App. 319, 40 P. 469, 470.

■ Nevertheless, defendants contend that there is an exception for cases "where a statute prescribes a duty to be directly per-

formed by a ministerial or executive officer, as a disbursing officer of the treasury, or an auditor charged with the duty of issuing warrants payable out of public revenues." *Stockman v. Leddy,* 55 Colo. 24, 129 P. 220. Since the defendants in this case will be required to pay out money under the statute, they contend that their situation is analogous to that of the State Auditor in the *Stockman* case, and like the auditor, they should be able to raise the constitutional objections to the statute. Defendants' contention, however, ignores this Court's most recent pronouncement concerning the standing of political subdivisions and their officers to challenge the constitutionality of a statute directing their performance. In *Board of County Commissioners of the County of Otero v. State Board of Social Services, supra,* the County challenged the validity of a rule adopted by the state Board of Social Services which provided for salary increases for county public assistance and welfare department employees. Although the rule adopted by the Board would require the County to pay over money, precisely the situation in this case, we held that the County lacked standing to challenge the validity of the Board's action. Therefore, to the extent that *Stockman* is inconsistent with our opinion in that case, it is overruled.

## III.

The defendants maintain that even if the statute is constitutional, they should not be required to pay funds raised from local taxes for children who, but for their mental retardation, or serious handicap, would be of an age to attend the school district's kindergarten program. They contend that the statute requires per pupil payment only for those children who, but for their handicap, would be enrolled in the "regular school program" in the district. Since kindergarten is not required by law, but is optional with the school district, *In re Kindergarten Schools, supra,* they take the position that kindergarten is not part of the "regular school program." We do not agree with this contention.

The defendants concede that they maintain a free kindergarten for children who are five years of age. Therefor, but for the mental retardation, or serious handicap of the children being educated through the Board, they would attend the district's free kindergarten. We believe that this is what the legislature intended by the words "regular school program" and therefore find no

error in the district court's calculation which included these children in determining the amount owed the Board.

IV.

Having decided these substantive issues in favor of the plaintiffs, we must decide whether an action in mandamus is proper under the circumstances here.

■ Relief in the nature of mandamus may be obtained "where the relief sought is to compel an inferior tribunal, corporation, board, officer, or person to perform an act which the law specially enjoins as a duty resulting from an office, trust, or station . . ." C.R.C.P. 106(2). Here, the statute clearly requires that the "school district *shall* provide to the community incorporated board" a sum of money determined by a stated formula. Therefore, a clear right in the Board to demand performance, and a clear legal duty on the defendants to act, makes this a proper case for disposition by mandamus. *Ahern v. Baker,* 148 Colo. 408, 366 P.2d 366.

■ Moreover, since the defendants have stipulated that if the statute is held to be valid, then the sums mentioned earlier are owed to the Board, they are hardly in a position to claim that there are further discretionary acts to be performed on their part that would make mandamus improper.

■ Defendants also argue that the trial court erred in awarding interest to the plaintiffs to run from the date of the judgment. They contend that interest from the date of judgment is improper in a mandamus action, yet they cite no authority for this proposition. Nor have we been able to find any authority that would support this contention. On the contrary, 1971 Perm. Supp., C.R.S. 1963, 73-12-102[4] requires the trial court to assess interest at the rate of six percent on any judgment rendered. Therefore, since the plain language of the statute applies to this case, and we know of no authority which would make an exception for a mandamus action, we hold that the trial court properly assessed interest from the date of the judgment.

V.

■ The defendant Kishkunas (substituted by stipulation for

---

[4]Now section 5-12-102, C.R.S. 1973.

Howard Johnson) as superintendent of School District No. 1 asserts that he is not a proper party defendant in this mandamus action since he has no legal authority to make payments of school money. We agree.

Pursuant to 1965 Perm. Supp., C.R.S. 1963, 123-30-7, the treasurer of the board of education is charged with the responsibility over and control of the money of the school district. Since the official duty of paying over to the Board the amounts in question is that of the treasurer, as authorized by the board of education, and not that of the superintendent, we find that the superintendent is not a proper party defendant, and therefore, the complaint should have been dismissed as to him.

VI.

The plaintiffs have cross-appealed claiming that the district court erred in not awarding plaintiffs attorney fees, and in not requiring the defendants to pay interest from the date that they were obligated under the statute to pay the funds over to the Board.

First, concerning attorney's fees, it is urged by the defendants that since this issue was not put before the trial court in a motion for a new trial, it is not properly before this Court. C.R.C.P. 59(f). However, C.R.C.P. 59(h) makes an exception where pure questions of law are involved, and there are no controverted factual issues. Therefore, to the extent that the question of attorney's fees can be decided as a matter of law, we will make that determination.

Plaintiff advances three theories as exceptions to the general rule that attorney's fees are not awarded to the prevailing party in civil litigation. First, they contend that the defendants have acted obdurately and in bad faith in not complying with the law. However, since this involves a factual determination of bad faith, and since the plaintiffs have not moved for a new trial on this issue, we hold it is not properly before this Court.

Second, plaintiffs advance the theory characterized as the "common fund" doctrine. They claim that they are entitled to attorney's fees from the defendants so that other beneficiaries of this litigation will not be unjustly enriched. *La Raza Unida v. Volpe,* 57 F.R.D. 94 (N.D. Calif. 1972). However, the primary

and immediate beneficiary of this litigation is the Board. While there may be secondary beneficiaries, as there will always be, that is insufficient to justify the invocation of this doctrine in this situation.

The plaintiffs' third theory upon which they claim an entitlement to attorney's fees is that they have acted as private attorneys general vindicating a strong public policy. However, since the Board is the party most interested in the lawsuit, we feel that they are not before us in the capacity of a private attorney general, but in the same capacity as any other interested party involved in litigation. Therefore, we feel that the doctrine is not applicable to this case.

Since we find none of plaintiffs' theories persuasive for removing this case from the general rule of non-payment of attorney's fees, we affirm the district court's order denying attorney's fees.

VII.

Finally, the plaintiffs contend that the trial court should have assessed interest against the defendants running from the time the statute obligated them to pay the money to the Board. We disagree.

In the absence of any contractual provision, prejudgment interest "can only be recovered in the cases enumerated" in 1971 Perm. Supp., C.R.S. 1963, 73-12-102. *Hunter v. Wilson,* 147 Colo. 36, 362 P.2d 553. Plaintiff contends that this case is one in which money is due on account, and pursuant to the statute, interest should be assessed "from the date when the same became due." However, the Court has interpreted "on account" as it appeared in predecessor statutes, to be that which "arises out of contract or some fiduciary relation." *Donley v. Bailey,* 48 Colo. 373, 110 P. 65, 68. Since the amounts to be paid in this case arise neither out of contract, nor out of a fiduciary relationship, we hold that the plaintiffs were not entitled to pre-judgment interest.

The judgment of the district court is affirmed as to all defendants except Superintendent Kishkunas. As to him, the judgment is reversed.

MR. JUSTICE GROVES does not participate.