## No. 27969

**The Board of County Commissioners of Boulder County, a Colorado body corporate and politic, and as the Boulder County Board of Equalization; and Margaret B. Markey; John P. Murphy; and Walden D. Toevs, individually and as members of the Board of County Commissioners and the Board of Equalization; and the Board of County Commissioners of Summit County, a Colorado body corporate and politic, and as The Summit County Board of Equalization; and Scott Gould; Thor Brunvand; and Liz Etie, individually and as members of the Board of County Commissioners and the Board of Equalization v. The Fifty-First General Assembly of the State of Colorado; Richard D. Lamm, Governor of Colorado, as well as a member of the State Board of Equalization; and The State Board of Equalization and its members; Mary Estill Buchanan, Secretary of State; Roy Romer, State Treasurer; J. D. MacFarlane, Attorney General; and Robert J. Scott, State Auditor**

(599 P.2d 887)

Decided August 27, 1979.

Cosgriff, Dunn & French, P.C., R. H. S. French, for Summit County.

Ann Raisch, for Boulder County.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Stephen H. Kaplan, Assistant Attorney General, for defendants-appellees.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

Plaintiffs are the Boards of County Commissioners of Boulder and Summit Counties acting in their capacity as the boards of commissioners of their respective counties and as individual members of those boards. They brought this action seeking a declaratory judgment that §39-1-103(5)(a), C.R.S. 1973, as amended, Colo. Sess. Laws 1977, ch. 494, 39-1-103(5) at 1729, (hereinafter H.B. 1452) is unconstitutional. Plaintiffs claim that H.B. 1452 does not provide for uniform taxation, and thus violates Article X, Section 3, of the Colorado Constitution. They also sought a preliminary injunction to prevent defendants from ordering plaintiffs to comply with H.B. 1452. The district court found that the plaintiffs lacked standing to bring this action and dismissed the case. We affirm.

H.B. 1452 requires *inter alia* that the valuation of real property for the year 1977 shall not exceed 140% of the average valuation of the same property for the years 1974 through 1976. Plaintiffs have postponed implementation of the statute pending the outcome of this action.

## I.

It has long been the rule in Colorado that political subdivisions of the state and the officers thereof lack standing to challenge the constitutionality of a state statute directing performance of their duties. *Lamm v. Barber,* 192 Colo. 511, 565 P.2d 538 (1977); *Denver Association for Retarded Children, Inc. v. School District No. 1,* 188 Colo. 310, 535 P.2d 200 (1975); *Board of County Commissioners v. State Board of Social Services,* 186 Colo. 435, 528 P.2d 244 (1974); *Board of County Commissioners v. Love,* 172 Colo. 121, 470 P.2d 861 (1970); *People v. Hively,* 139 Colo. 49, 336 P.2d 721 (1959); *Ames v. People,* 26 Colo. 83, 56 P. 656 (1899).

Because counties and their subordinate agencies are not independent political entities, counties and their officers have no standing to contest the directives given them by the state. The only exception is where

a specific statute grants them that right. *Cf. Board of County Commissioners v. City and County of Denver,* 194 Colo. 252, 571 P.2d 1094 (1977). No such statute has been cited by plaintiffs in this case.[1]

In *Lamm v. Barber, supra,* we set forth the reasons behind this rule of judicial prudence:

"[C]ourts generally refuse to determine [the] constitutionality of statutes affecting the rights of persons not before the court and decline to allow such grave questions to be raised by public officials whose duty is to perform the action required by the statute being attacked." 192 Colo. at 519, 565 P.2d at 544.

We also noted in *Ames v. People, supra,* that:

"Public policy and public necessity require prompt and efficient action from such officers, and when intrusted with the assessment of taxes and the collection and disbursement of revenue, they have no right to refuse to perform ministerial duties prescribed by law because of any apprehension on their part that others may be injuriously affected by it, or that the statute prescribing such duties may be unconstitutional." 26 Colo. at 90, 56 P. at 658.

## II.

Plaintiffs ask this court to rule that the door to the courtroom, so firmly shut by long standing decisions of this Court, has been opened for them. First, they assert that the conflicting obligations they bear as county commissioners and members of the boards of equalization require that they be allowed to bring this action. Second, plaintiffs contend that because their authority in this matter is discretionary rather than ministerial, the rule barring standing does not apply. Finally, plaintiffs contend that the fact that they brought this action for a declaratory judgment, rather than waiting to assert the unconstitutionality of H.B. 1452 in defense when the state attempts to require them to perform their duties, relieves them of the strictures of our holdings. We find none of these arguments persuasive.

### A. The Alleged Conflict Between Plaintiffs' Statutory and Constitutional Duties.

Under Article XII, Section 8 of the Colorado Constitution, plaintiffs as county commissioners must take an oath requiring them to support the Colorado Constitution. In addition, each commissioner is required by section 30-10-311, C.R.S. 1973 (1977 Repl. Vol. 12) to post a bond which

---

[1] Plaintiffs claim that the Declaratory Judgment Rule, C.R.C.P. 57, and the Declaratory Judgment Act, sections 13-51-101 *et seq.* specifically grant them standing in this action. While plaintiffs qualify as persons under the Act, and may in certain instances bring suit, the Act does not confer standing upon them for the purposes of challenging the constitutionality of a state statute. *Cf. Board of County Commissioners v. Donoho,* 144 Colo. 321, 356 P.2d 267 (1960) (Declaratory action filed by county to determine residency requirements under welfare statute. Plaintiffs must find an independent source authorizing standing).

may be forfeited if he fails to discharge the duties of his office.

In their alternate capacities as the boards of equalization, plaintiffs are required by Article X, Section 15 of the Colorado Constitution to "raise, lower, adjust and equalize valuations for assessment of taxes upon real and personal property located within their respective counties" as may be prescribed by law. Failure to comply with this duty without just cause will render them liable to a fine of not less than twenty-five nor more than one hundred dollars. Section 30-10-322, C.R.S. 1973 (1977 Repl. Vol. 12).

Thus, because of the interplay between these statutory and constitutional provisions, plaintiffs claim that they are placed on the horns of a dilemma: If plaintiffs refuse to enforce H.B. 1452, asserting its unconstitutionality, they may be liable to a fine for not performing their duty. Yet, if plaintiffs do enforce a statute which they believe is unconstitutional, they may be in violation of their duty to support the Constitution and their bond may be forfeited.

Plaintiffs' asserted dilemma arises only because they misapprehend both the nature of their duties under the Constitution and the meaning of sections 30-10-311 and 30-10-322. First, the bond which each county commissioner is required to post under section 30-10-311 is:

"[C]onditioned that he will faithfully and honestly discharge the duties of his office as such county commissioner so long as he continues in office. . . ."

As we noted above, one duty of the county commissioners, when they sit as boards of equalization, is to equalize valuations *as may be prescribed by law*. Since H.B. 1452 is the manner of assessment prescribed by law, plaintiffs' compliance with the terms of the statute will not, absent other evidence, be grounds for forfeiture of their bond. Statutes are presumed to be constitutional. *People v. Sneed,* 183 Colo. 96, 514 P.2d 776 (1973).

Similarly, section 30-10-322 penalties are only applicable if the plaintiffs act *without just cause*. Given the presumed constitutionality of H.B. 1452, plaintiffs have just cause for attempting to comply with the requirements of the statute, and cannot be subjected to the penalty provisions of section 30-10-322 for doing so.

The only possible problem arises when the plaintiffs choose not to enforce the statute based upon a personal belief as to the Act's unconstitutionality. Such a decision, if in error, may conceivably lead to plaintiffs' liability. Although we are aware of the plaintiffs' position, we feel compelled to defer to the well established rule barring standing to those in the plaintiffs' situation. The underlying principal binding our decisions on this matter is that county officials are to follow the law.

B.   Plaintiffs' Distinction Between Ministerial
and Discretionary Duties.

■ Plaintiffs also allege that because their duties under H.B. 1452 are discretionary, they are excepted from the rule barring standing. Because we agree with the trial court that H.B. 1452 prescribes a ministerial duty, we see no need to consider whether the standing rule applies to discretionary duties. Plaintiffs' case falls squarely under the holding of *Lamm v. Barber, supra.*

In *Lamm,* we considered the propriety of a writ of mandamus when the State Board of Equalization sought to compel several county assessors to implement increases in their assessment abstracts. We recognized that some of the functions required of a county assessor were discretionary, but we perceived no problem in ordering the assessors to comply with a statutory requirement that at most indirectly affected their discretionary powers.

Here, as in *Lamm,* the same considerations apply. While plaintiffs' function in determining assessments may be discretionary in some instances, they are not discretionary under H.B. 1452. The Act provides a clear standard for the plaintiffs to follow and admits of no discretion in its application. *See Denver Association for Retarded Children, Inc. v. School District No. 1, supra.*

### C.  Plaintiffs' Assertion of Standing Based on Lamm v. Barber.

■ Plaintiffs also seek to be granted standing on the basis of statements made by this court in *Lamm v. Barber*. In the course of our opinion in that case, we stated in dicta that:

"It is notable that from the Act's effective date, June 10, 1976, the respondents took no action to seek judicial sanction for their claim that the Act is unconstitutional, or to test their standing to raise the question, as they might have done by seeking a declaratory judgment or writ of prohibition." (footnote 2)

We also noted that:

"Certainly the respondent assessors could have lightened their burden of compliance, without foregoing their day in court to test the statute's constitutionality, had they commenced declaratory judgment or prohibition proceedings promptly after the statute took effect on June 10, 1976. Rather they chose not to comply with the State Board's order while taking no legal action to test its validity." (footnote 8)

From these statements in the footnotes, plaintiffs draw the conclusion that, because they have brought this declaratory judgment action, they have gained standing to challenge the constitutionality of H.B. 1452. Footnote 2 is at best ambiguous in this regard. It merely states that the respondents in *Lamm v. Barber* could have brought a declaratory judgment action "to test their standing," not that they would have acquired standing by bringing such an action.

Footnote 8, however, admits of no such ambiguity. Accordingly, to the extent that our opinion in *Lamm v. Barber* suggests that either plaintiffs or those similarly situated can acquire standing to challenge the constitutionality of a statute directing the performance of their duties by bringing an action for a declaratory judgment, that opinion is expressly disapproved. The public policy and public necessity underlying the long line of decisions on standing beginning with *Ames v. People, supra,* and most recently reaffirmed in *Lamm v. Barber,* would be ill served if plaintiffs could circumvent that policy by the simple expedient of bringing a declaratory judgment action.

### III.

Finally, plaintiffs contend that because the constitutional status of H.B. 1452 is *publici juris,* this court should decide that issue regardless of the parties' standing. We decline to do so.

The doctrine of *publici juris* has been invoked by this court on rare occasions pursuant to our original jurisdiction under Article VI, Section 3 of the Colorado Constitution. *See e.g. Lamm v. Barber.* It is employed in order to decide questions of great public importance when those seeking resolution of those questions may not otherwise have access to the courts. As in all cases involving our original jurisdiction, the exercise of *publici juris* is a matter of sound judicial discretion, and will be looked at only when there are special and important reasons therefore. *Cf.* C.A.R. 49.

In this case plaintiffs proceeded initially in the trial court,[2] and did not attempt to invoke our original jurisdiction through *publici juris* until their appeal. Because we believe that the doctrine should be strictly limited to encompass only those matters arising out of the exercise of our original jurisdiction, we hold that the plaintiffs may not rely on *publici juris* to overcome their lack of standing and secure the answer they seek in this proceeding.

Accordingly, the judgment of the district court is affirmed.

JUSTICE CARRIGAN and DUBOFSKY do not participate.

---

[2] The trial court correctly recognized that plaintiffs could not invoke the doctrine of *publici juris* in the district court.