BANCROFT–CLOVER WATER AND SANITATION DISTRICT and Alameda Water and Sanitation District, Plaintiffs-Appellees,

v.

METROPOLITAN DENVER SEWAGE DISPOSAL DISTRICT NO. 1, Defendant-Appellee,

The City and County of Denver, Intervenor-Appellant.

No. 80CA1270.

Colorado Court of Appeals, Div. I.

May 12, 1983.

Rehearing Denied June 9, 1983.

Certiorari Denied Oct. 11, 1983.

Calkins, Kramer, Grimshaw & Harring, Richard L. Harring, Denver, for plaintiff-appellee Bancroft-Clover Water and Sanitation Dist.

Robinson & Scheurer, P.C., Richard J. Scheurer, Lakewood, for plaintiff-appellee Alameda Water and Sanitation Dist.

Max P. Zall, City Atty., George J. Cerrone, Jr., Steven J. Coon, Asst. City Attys., Denver, for intervenor-appellant.

No appearance for defendant-appellee Metropolitan Denver Sewage Disposal Dist. No. 1.

BERMAN, Judge.

Denver appeals a declaratory judgment which granted Bancroft-Clover and Alameda Water and Sanitation Districts status as "connecting municipalities" under a 1964 service agreement with Metropolitan Denver Sewage Disposal District No. 1 (Metro). We reverse.

Until 1978, Bancroft and Alameda received sewage treatment services directly from Denver and were expressly designated

as "associated" municipalities under the Metro Sewage Treatment and Disposal Agreement (Sewage Treatment Agreement). Only associated municipalities paid Denver for sewage treatment services. When, during that same year, Metro took responsibility for transportation of Bancroft and Alameda's sewage to Denver's primary treatment plant and responsibility for its secondary treatment, Bancroft and Alameda tendered their checks to Metro rather than to Denver, contending that they had become "connecting municipalities" entitled to make payments directly to Metro. Metro's sewage services are considerably less expensive than those of Denver. Metro refused to accept the payments and adopted a resolution which, in effect, forced Bancroft and Alameda to seek a declaration from the courts as to their status as connecting municipalities.

After the suit was filed, Metro sent a letter to all its member municipalities, inviting intervention in the action. Only Denver sought and was granted leave to intervene. Denver's request to act as a class representative for the other municipalities was denied, and its argument that the municipalities were indispensable parties was rejected.

The trial court found that the Sewage Treatment Agreement contemplated automatic changes in status from "associated" to "connecting," and that because Alameda and Bancroft came within the definition of connecting municipalities, they were entitled to pay Metro directly for its services. Offers of proof by Denver concerning testimony by the draftsman of the Sewage Treatment Agreement and concerning the requirements of Federal environmental statutes and their effect on the construction of the agreement were rejected.

## I.

Denver first contends that because the Sewage Treatment Agreement was ambiguous, extrinsic evidence was necessary to determine whether the agreement needed to be formally amended to change the status of Bancroft and Alameda from "associ-

ated" to "connecting." Thus, Denver contends that it was error to disallow testimony by the draftsman of the agreement and testimony concerning Federal environmental constraints on changes in status. We agree.

The trial court relied, for the most part, on two provisions of the Sewage Treatment Agreement to conclude that Bancroft and Alameda became connecting municipalities in 1978. The first provision relied on by the court defines "connecting municipality" as "a Municipality . . . all or any part of the Sewer System of which for the disposition of sewage therefrom is directly connected with a sewer interceptor of the District which terminates at a sewage treatment and disposal plant of the District." Sewage Treatment Agreement Article I, § 102(A)(12). The court reasoned that, once a municipality is "directly connected" to Metro, it automatically attains connecting status, and no amendment to the service agreement is necessary to effect that change.

The provision principally relied on by the trial court reads as follows:

"No Associated Municipality shall be liable for the payment of any charge of the District so long as its Sewer System or any part thereof is not directly connected with a sewer interceptor of the District which terminates at a sewage treatment and disposal plant of the District." Sewage Treatment Agreement Article V, § 506.

The court found, as a factual matter, that Bancroft and Alameda were directly connected to Metro, and reasoned from the above section that they had lost their status as associated municipalities liable for payments to Denver.

The court specifically rejected Denver's arguments that the following provision might require amendment if Bancroft and Alameda were to enjoy connecting status:

"Notwithstanding the temporary absence of any one or more connections to the System because the Project has not yet been completed, on the effective date

hereof the Associated Municipalities in the District are:

(a) Alameda Water and Sanitation District,

(b) Bancroft Water and Sanitation District,

(c) East Lakewood Sanitation District, and

(d) Highland Park Sanitation District; and on the effective date hereof the Connecting Municipalities in the District are:

(e) City of Arvada ..." Sewage Treatment Agreement Article I, § 102(A)(30).

Because of the above reasoning, the trial court rejected offers of proof by one of Denver's witnesses, the draftsman of the agreement, who would have testified that, at the time the agreement was signed in 1964, the signatories intended that a change in status from associated to connecting would require a written amendment to the agreement. Denver also made an offer of proof concerning the effect of Federal environmental statutes on such changes in status.

■■■ The determination of ambiguity of a document is a question of law, and we are not bound by findings of the trier of fact. *Buckley Bros. Motors, Inc. v. Gran Prix Imports, Inc.,* 633 P.2d 1081 (Colo. 1981). We hold that the trial court erred in refusing the offers of proof, because the contract is sufficiently ambiguous to merit the introduction of extrinsic evidence to ascertain its intent at the time it was drafted. *See Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.,* 195 Colo. 253, 577 P.2d 748 (1978). If the signatories had intended to provide for automatic changes in status from associated to connecting, they could have expressly provided for such changes in the agreement.

On remand, all extrinsic evidence which is relevant, and otherwise admissible, which may be helpful to an interpretation of the ambiguous provisions of the Sewage Treatment Agreement should be admitted.

## II.

■■■ Denver also maintains that the failure to join indispensable parties was a fatal jurisdictional defect which voided the judgment. We agree.

It appears from the record that, by according Bancroft and Alameda connecting status under the agreement, although Metro will receive payments from Bancroft and Alameda for secondary treatment of Bancroft and Alameda's sewage, Metro will be required to make payments to Denver for its primary treatment. Thus, a deficit in Metro's total receipts would be created. This deficit might have to be collected from all connectors to Metro. Even though the connectors' pecuniary interest would be thus affected, none of them, save Denver, were parties in this case.

This case is controlled by *Denver v. Arvada,* 192 Colo. 88, 556 P.2d 76 (1976). There, the court construed C.R.C.P. 57(j) which states, in part:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding ...."

And, in that case, because pecuniary interests of water users could have been affected by the outcome of a decision regarding the disbursal of an escrow account held by Arvada, the Supreme Court ruled "that the trial court *sua sponte* should bring in needed additional parties ...."

Although we recognize that the *Denver v. Arvada* decision did not "lay down a general rule as to when the joinder of additional parties is mandatory and when it is discretionary," we perceive the facts of that case to be similar to the present controversy and to mandate the same result. In order to prevent "multifarious litigation," the " 'trial court should insist that jurisdiction be obtained of all ... parties [whose rights would be adversely affected] either personally or in an appropriate class action under the provisions of [C.R.C.P. 23].' " *Denver v. Arvada, supra* (Carrigan, J., concurring).

The judgment is reversed and the cause is remanded for proceedings consistent with this opinion.

STERNBERG and COYTE,* JJ., concur.