**MESA VERDE COMPANY,**
**Plaintiff–Appellee,**

v.

**The MONTEZUMA COUNTY BOARD of EQUALIZATION and the Montezuma County Assessor, Defendants–Appellants.**

**No. 91SA237.**

Supreme Court of Colorado,
En Banc.

June 8, 1992.

Holme, Roberts & Owen, Jeffrey A. Chase, James D. Butler, Martha E. Cox, Denver, for plaintiff-appellee.

Bob D. Slough, Cortez, for defendants-appellants.

Justice KIRSHBAUM delivered the Opinion of the Court.

The appellants, the Montezuma County Board of Equalization (the Board) and the Montezuma County Assessor (the Assessor), appeal the judgment of the District Court for Montezuma County declaring that four parcels of land (the property) located within the boundaries of Mesa Verde National Park (the Park) are exempt from taxation pursuant to the provisions of sections 39–3–135(1) and (4)(c), 16B C.R.S. (1991 Supp.), and concluding that the Assessor and the Board lacked standing to challenge the constitutionality of those statutory provisions.[1] We affirm.

---

**1.** The appellants do not contest the trial court's conclusion that the property is exempt from taxation under the language of sections 39–3–135(1) and (4)(c). They challenge the propriety of the trial court's ruling that they lacked standing to challenge the constitutionality of those

provisions and present arguments in support of their constitutional challenges. The appeal was filed in this court presumably because of the constitutional challenges asserted by the appellant. *See* § 13–4–102(1)(b), 6A C.R.S. (1987) (Colorado Court of Appeals lacks jurisdiction

I

The United States owns the property, which lies within the boundaries of the Park. Pursuant to a contract with the United States, appellee Mesa Verde Company (Mesa Verde) is required to operate various commercial facilities located on the property for the benefit of the general public. These facilities include lodges, cabins, camps, dormitories, restaurants, cafeterias, refreshment stands, general stores, and automobile service stations. Mesa Verde has conducted business in the Park since 1937.

On August 1, 1989, the Board ordered the Assessor to list, appraise and value the property for assessment of property taxes for 1989.[2] Pursuant to that order, on August 7, 1989, the Assessor determined the value of the property for assessment to be $1,837,180. On that same day, the Board included the property on the 1989 property tax assessment roll for Montezuma County. The listing described Mesa Verde as the owner of the property. On August 31, 1989, Mesa Verde filed a civil action (No. 89CV162) against the appellants in the Montezuma County District Court requesting the trial court to remove the property from the Assessor's roll.[3]

In 1990, the Board listed the property on the 1990 property tax assessment roll for Montezuma County. The listing described Mesa Verde as the owner of the property and indicated the value for assessment purposes to be $1,837,180. On July 10, 1990, pursuant to section 39–5–122(3), 16B C.R.S. (1982), and section 39–8–106(1), 16B C.R.S. (1982 & 1991 Supp.), Mesa Verde filed with the Board a petition protesting the inclusion of the property on the tax assessment

roll for 1990 and requesting a hearing. Upon the Board's denial of the petition, Mesa Verde filed another civil action (No. 90CV134) against the appellants in the Montezuma County District Court. The complaint, filed September 7, 1990, requested a trial de novo to determine whether the property was properly included in the 1990 tax assessment roll and, if so, to determine the actual value that should be assigned to the property.

On October 18, 1990, the trial court ordered the two cases consolidated, and later ordered a bifurcated proceeding in the consolidated cases. The first phase of the proceeding was designated to determine whether the property was properly included in the 1989 and 1990 tax assessment rolls. The second phase was designated to determine issues of valuation.

On February 27, 1991, the appellants filed a motion for partial summary judgment, asserting that the property was not exempt from taxation. In their brief supporting this motion they argued that to the extent sections 39–3–135(1) and (4)(c), 16B C.R.S. (1991 Supp.), established exemptions from taxation applicable to the property, such statutory provisions violated equal protection guarantees contained in the Colorado and United States Constitutions and article X, sections 3(1)(a), 6, 9, and 10 of the Colorado Constitution. On March 18, 1991, Mesa Verde filed a cross-motion for summary judgment, asserting that the property was exempt from taxation pursuant to sections 39–3–135(1) and (4)(c), and further asserting that the appellants lacked standing to challenge the constitutionality of those statutory provisions.[4] On May 20,

over case in which the constitutionality of a statute is in question). *But see* Act effective July 1, 1992, S.B. 165, 1992 Colo.Sess.Reps. (to be codified at § 13–4–102(1)(b)).

2. *See* §§ 39–1–105 to –111,' 16B C.R.S. (1982 & 1991 Supp.).

3. The complaint asserted four claims for relief: declaratory relief pursuant to §§ 13–51–101 to –115, 6A C.R.S. (1987), ˀnd C.R.C.P. 57, 7A C.R.S. (1990); trial de novo pursuant to § 39–8–108, 16B C.R.S. (1991 Supp.); review of final agency action pursuant to § 24–4–106(4), 10A C.R.S. (1988); and judicial review of administrative

action pursuant to C.R.C.P. 106(a)(4), 7A C.R.S. (1990).

4. Section 39–3–135(1) states in relevant part:
   Except for exempt real property being operated under a management agreement, this section shall not apply to exempt property furnished by a governmental agency to a contractor as necessary to the considerations of a negotiated contract if such contractor maintains permanent written records substantiating the terms of such contract....
   Section 39–3–135(4)(c) states in relevant part:

1991, the trial court denied the motion filed by the appellants and granted Mesa Verde's motion for summary judgment. The trial court also concluded that the appellants lacked standing to challenge the constitutionality of sections 39–3–135(1) and (4)(c).

## II

■ The appellants contend that, contrary to the trial court's judgment, they have standing to challenge the constitutionality of the exemptions established by sections 39–3–135(1) and (4)(c) because they have suffered injury in fact to a legally protected interest. We disagree.

In *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977), after reviewing several United States Supreme Court decisions articulating various standards for determining whether particular classes of plaintiffs satisfied constitutional and prudential standing requirements, we adopted a two-part test of standing for plaintiffs seeking judicial resolution of legal disputes in our state courts: whether the plaintiff has suffered injury in fact to a legally protected or cognizable interest. Id. at 168, 570 P.2d at 539. We recently described the test as follows:

> Resolution of the standing issue involves two considerations: (1) whether the party seeking judicial relief has alleged an actual injury from the challenged action; and (2) whether the injury is to a legally protected or cognizable interest.... These two considerations provide the framework for determining whether the asserted legal basis for a claim—whether constitutional, statutory, or otherwise—can properly be understood as granting a person in O'Bryant's position a right to judicial relief.

*O'Bryant v. P.U.C.,* 778 P.2d 648, 652 (Colo.1989) (citations omitted). *See also Board of County Comm'rs v. Bowen/Edwards Assocs., Inc.,* 830 P.2d 1045, 1052

(Colo.1992); *see, e.g., Board of County Comm'rs v. Denver Bd. of Water Comm'rs,* 718 P.2d 235, 241 (Colo.1986); *Cloverleaf Kennel Club, Inc. v. Colorado Racing Comm'n,* 620 P.2d 1051 (Colo. 1980); *Dodge v. Department of Social Servs.,* 198 Colo. 379, 600 P.2d 70 (1979).

■ While these formulations resolve most standing questions, we have in essence recognized a special rule of standing when political subdivisions of the state or officers thereof seek to challenge the constitutionality of state statutes directing the performance of their duties. In those circumstances, we have concluded that such entities and officers lack standing to assert constitutional challenges to statutes defining their responsibilities. *Board of County Comm'rs v. Fifty–First Gen. Assembly,* 198 Colo. 302, 599 P.2d 887 (1979); *Lamm v. Barber,* 192 Colo. 511, 565 P.2d 538 (1977); *Denver Ass'n for Retarded Children, Inc. v. School Dist. No. 1,* 188 Colo. 310, 535 P.2d 200 (1975); *Board of County Comm'rs v. State Bd. of Social Servs.,* 186 Colo. 435, 528 P.2d 244 (1974); *Board of County Comm'rs v. Love,* 172 Colo. 121, 470 P.2d 861 (1970); *People v. Hively,* 139 Colo. 49, 336 P.2d 721 (1959); *Ames v. People,* 26 Colo. 83, 56 P. 656 (1899). This rule reflects the firmly rooted principle of public policy that public officers must perform their statutorily defined ministerial duties promptly and efficiently. *Board of County Comm'rs v. Fifty–First Gen. Assembly,* 198 Colo. at 306, 599 P.2d at 889; *Ames v. People,* 26 Colo. at 90, 56 P. at 658. This rule does not conflict with our decision in *Wimberly;* it simply articulates one area in which one class of plaintiffs can claim no legally protected interest.

The statutory provisions here challenged direct the appellants to include and to exclude particular kinds of property in creating the list of property subject to taxation. Neither the Board nor the Assessor has discretion to ignore these legislative mandates. In view of our prior decisions, the

---

[T]his section shall not apply to any real property owned by the United States ... when the use of such real property is the result of a lease of or a concession in or is relative to the use of a public park, market, fairground, or similar property which is available to the use of the general public....
§ 39–3–135(1) and (4)(c), 16B C.R.S. (1991 Supp.).

appellants lack standing to challenge the constitutionality of those statutes. In essence, they have no legally protected interest to ignore or challenge the constitutionality of the statutes that prescribe their official responsibilities.

The appellants assert that they have sustained injury to a legally protected interest—their interest in exercising their taxing authority in a manner to maximize property tax income without unduly burdening other classes of taxpayers. They rely on our decision in *Denver Urban Renewal Auth. v. Byrne*, 618 P.2d 1374 (Colo. 1980), to support this argument. The argument is unpersuasive.

Whatever interest the appellants have in increasing tax revenues, the means by which that interest may be advanced are fixed in large part by the two statutes in question. The appellants have no legal right to ignore those statutory provisions.

Our decision in *Byrne* is distinguishable from this case. In *Byrne*, the Auditor of the City and County of Denver, a home rule city, challenged the constitutionality of a statute authorizing certain funding arrangements agreed to by Denver and the Denver Urban Renewal Authority (hereafter DURA) for a major project. The Auditor asserted the challenge in a counterclaim filed in response to a civil action filed by DURA to compel the Auditor to approve an agreement incorporating the funding arrangements.

DURA argued that the Auditor lacked standing to challenge the constitutionality of the statute. We disagreed, noting that the Auditor's duties were not prescribed by the challenged statute, that as a home rule city with its own constitutional underpinning Denver was not a political subdivision of the state, and that in these circumstances the Auditor had asserted injury to a legally protected interest. We reached a similar result for substantially similar reasons in *City of Colorado Springs v. State*, 626 P.2d 1122 (Colo.1981), wherein we concluded that the home rule city of Colorado Springs had standing to challenge certain funding provisions of the 1978 Pension Reform Act, §§ 31-30-801 to -807, 12 C.R.S. (1980 Supp.).

In this case, the Assessor is an official of Montezuma County, a political subdivision of the state. *Board of County Comm'rs v. Love*, 172 Colo. 121, 125, 470 P.2d 861, 862 (1970). The Board is also an official entity exercising authority of the county. Neither has an independent legally protected interest to ignore or challenge the constitutionality of statutes defining its duties. The appellants' status is thus quite different from that of an official of a home rule city.

■ The appellants finally contend that they have standing to challenge the statutory exemption provisions here at issue pursuant to the doctrine of *publici juris*. They rely on our decision in *Lamm v. Barber*, 192 Colo. 511, 565 P.2d 538 (1977), in support of this argument. The argument is not persuasive.

In *Lamm*, the State Board of Equalization (the Equalization Board) filed an original proceeding requesting this court to compel assessors of three separate counties to implement increases in their respective assessment abstracts pursuant to an administrative order adopted by the Equalization Board and directed to a total of forty-five county assessors. The three assessors, by counterclaim, challenged the constitutionality of the statute relied upon by the Equalization Board in promulgating its order. We initially held, consistent with the rule that political subdivisions and officials thereof lack standing to challenge the constitutionality of a statute defining their duties, that the assessors had no standing to challenge the constitutionality of the statute. *Id.*, at 521, 565 P.2d at 545. However, we then proceeded to determine two constitutional issues briefed by the parties and amici curiae because of our conclusion that the fiscal impact of a subsequent decision invalidating the statute would be significant.

On rare occasions we have relied upon the doctrine of *publici juris* in the exercise of our original jurisdiction under article VI, section 3, of the Colorado Constitution, when persons seeking resolution of ques-

tions of great public importance could not otherwise have access to the courts. *Board of County Comm'rs v. Fifty–First Gen. Assembly,* 198 Colo. at 308, 599 P.2d at 891. *See Regional Transportation Dist. v. Colorado Dep't of Labor & Employment,* 830 P.2d 942, 944 n. 5 (Colo. 1992). This case involves the exercise of appellate, not original, jurisdiction. Furthermore, the issue raised here is not of sufficiently great public importance to warrant the application of the doctrine.

### III

The judgment of the trial court is affirmed.