Honorable Governor Roy **ROMER**, and **Gale A. Norton**, Attorney General for the State of Colorado, on their own behalf and on behalf of the People and Electors of the State of Colorado, and the State of Colorado, **Petitioners**,

v.

**FOUNTAIN SANITATION DISTRICT**, a Colorado Special District, **Respondent**.

No. 94SA302.

Supreme Court of Colorado, En Banc.

June 19, 1995.

---

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Merrill Shields, Deputy Atty. Gen., Richard Djokic, First Asst. Atty. Gen., Stephen G. Smith, Asst. Atty. Gen., Denver, for petitioners.

Cooley Godward Castro Huddleson & Tatum, William J. Leone, Boulder, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

The petitioners, the Governor and the Attorney General of the State of Colorado,[1] initiated this original proceeding pursuant to

---

1. Governor Roy Romer and Attorney General Gale Norton are elected officials charged with enforcing the statutes and constitution of the State of Colorado and as such, serve as named defendants for a class consisting of the people and electors of the State of Colorado and the electors of the Fountain Sanitation District.

C.A.R. 21 to obtain a writ of prohibition against the El Paso County District Court. The petitioners request this court to prohibit the trial court from exercising jurisdiction over this civil action initiated by the respondent, the Fountain Sanitation District (the district). Having issued a rule to show cause why the relief requested should not be granted, we make the rule absolute.

## I

■ The district is a special district governed by the provisions of the Special District Act, §§ 32–1–101 to –1605, 13 C.R.S. (1994 Supp.). The district provides waste water collection, transportation, and treatment services for residents of El Paso County. The district's two primary sources of revenue are proceeds from tap sales[2] and recovery charges imposed on new taps.[3] The district's charges for these transactions are established by municipal ordinances and resolutions.

The district initiated this action against the petitioners pursuant to the Declaratory Judgment Act, §§ 13–51–101 to –115, 6A C.R.S. (1987), and C.R.C.P. 57 to obtain a declaration that certain revenue limitations established by article X, section 20, of the Colorado Constitution (Amendment 1)[4] do not apply to revenues received from either tap license fees or recovery charges from new taps. The respondents allege that those provisions of Amendment 1 might be construed to limit the district's ability to maintain its current practices regarding tap sales and recovery fees.[5] The petitioners moved to dismiss the action for lack of jurisdiction and for failure to state a claim upon which relief could be granted, pursuant to C.R.C.P. 12(b)(1) and 12(b)(5). The trial court denied the motion, and the petitioners then filed this petition for writ of prohibition.

## II

The petitioners argue that a special district, which is a political subdivision of the state, lacks standing to seek a declaratory

2. The district sells revocable licenses to developers and new customers seeking sewage treatment services. The licenses are authorization to "tap" into the district's sewage treatment system.

3. Generally, a developer requests that the district provide services in areas of new development where extension of the district's main transportation lines or other construction is necessary. The developer pays a portion of the cost associated with such improvements and the district collects an agreed upon charge from other developers or new users who seek to utilize the extended or new facilities. The district then agrees to remit these charges to the developer with whom the recovery agreement was negotiated. Pursuant to this type of arrangement, the district does not retain the recovery charge, but remits the charge to the developer who paid for the necessary construction. Recovery agreements are authorized by § 32–1–1006(3), 13 C.R.S. (1994 Supp.).

4. Amendment 1 provides in pertinent part as follows:

(2) **Term definitions.** Within this section:
. . . .
(b) "District" means the state or any local government, excluding enterprises.
. . . .
(e) "Fiscal year spending" means all district expenditures and reserve increases except, as to both, those for refunds made in the current or next fiscal year or those from gifts, federal funds, collections for another government, pension contributions by employees and pension fund earnings, reserve transfers or expenditures, damage awards, or property sales.

(f) "Inflation" means the percentage change in the United States Bureau of Labor Statistics Consumer Price Index for Denver–Boulder, all items, all urban consumers, or its successor index.

(g) "Local growth" for a non-school district means a net percentage change in actual value of all real property in a district from construction of taxable real property improvements, minus destruction of similar improvements, and additions to, minus deletions from, taxable real property. . . .
. . . .
(7) **Spending limits.** (a) The maximum annual percentage change in state fiscal year spending equals inflation plus the percentage change in state population in the prior calendar year, adjusted for revenue changes approved by voters after 1991. Population shall be determined by annual federal census estimates and such number shall be adjusted every decade to match the federal census.
. . . .

Colo. Const. art. X, § 20(2), (7).

5. In its complaint the district alleged that it normally attempts to match tax revenues and service charges with variable operating expenses and to match proceeds from sales of taps with anticipated future capital needs.

judgment against the state in this action. We agree.

### A

It is well established that political subdivisions of the state do not have standing to challenge the constitutionality of a state statute directing the performance of their duties. *Denver Urban Renewal Auth. v. Byrne,* 618 P.2d 1374, 1379 (Colo.1980); *Board of County Comm'rs v. Fifty–First Gen. Assembly,* 198 Colo. 302, 304, 599 P.2d 887, 888 (Colo.1979); *Lamm v. Barber,* 192 Colo. 511, 519, 565 P.2d 538, 544 (1977); *Denver Ass'n for Retarded Children, Inc. v. School Dist. No. 1,* 188 Colo. 310, 316, 535 P.2d 200, 204 (1975); *Board of County Comm'rs v. State Bd. of Social Servs.,* 186 Colo. 435, 439, 528 P.2d 244, 245–46 (1974); *Board of County Comm'rs v. Love,* 172 Colo. 121, 125, 470 P.2d 861, 862–63 (1970); *Ames v. People,* 26 Colo. 83, 90, 56 P. 656, 658 (1899). However, a political subdivision of the state necessarily possesses implied authority to carry out powers expressly conferred upon it by the Colorado Constitution or by statute. *Love,* 172 Colo. at 125, 470 P.2d at 862. Thus an exception to the general rule is recognized when subordinate political subdivisions are constitutionally or by statute granted express or implied authority to file a civil action against the state. *State Dep't of Personnel v. Colorado State Personnel Bd.,* 722 P.2d 1012, 1018 (Colo.1986); *Denver Urban Renewal Auth.,* 618 P.2d at 1380; *Martin v. District Court,* 191 Colo. 107, 109, 550 P.2d 864, 866 (1976); *Love,* 172 Colo. at 125, 470 P.2d at 862.

### B

The district contends that the general rule is inapplicable here because a civil action filed against the state to determine the validity of the ordinances differs from civil actions filed by political subdivisions seeking to determine the constitutionality of a state statute. The distinction is not persuasive. Issues of standing are not controlled by the nature of the relief sought, but rather require a preliminary analysis of the nature of the interest of the plaintiff. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 244, 57 S.Ct. 461, 465, 81 L.Ed. 617 (1937); *see County Comm'rs v. Bowen/Edwards Associates,* 830 P.2d 1045, 1053–54 (Colo.1992). Absent constitutional or statutory provisions establishing a contrary set of circumstances, the interests of a political subdivision of a state must be deemed commensurate with the interests of the state for purposes of standing. *Love,* 172 Colo. at 125, 470 P.2d at 862–63.

### C

The district argues that the Declaratory Judgment Act and C.R.C.P. 57, which govern proceedings in declaratory judgment actions, constitute specific grants of authority to the district to seek a declaration of the validity of its ordinances. We disagree.

The Declaratory Judgment Act contains the following pertinent provisions:

> **Who may obtain declaration.** Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

§ 13–51–106, 6A C.R.S. (1987).[6] We have recognized that in adopting the Declaratory Judgment Act the General Assembly created a new remedy. *Colorado State Bd. of Optometric Exam'rs v. Dixon,* 165 Colo. 488, 493, 440 P.2d 287, 289 (1968); *see Aetna Life Ins. Co.,* 300 U.S. at 244, 57 S.Ct. at 465 (construing federal Declaratory Judgment Act). The statute neither expands nor contracts the jurisdiction of Colorado's courts. *See Bowen/Edwards Assocs.,* 830 P.2d at 1053; *cf. Skelly Oil Co. v. Phillips Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1949); *Rocky Mountain Hosp. and Medical Serv. v. Phillips,* 835 F.Supp. 575, 577 (D.Colo.1993) (federal Declaratory Judgment Act is procedural, not jurisdictional, and

---

**6.** A person includes a municipal corporation.

§ 13–51–103, 6A C.R.S. (1987).

merely grants federal courts authority to use a new remedy in cases where it otherwise has jurisdiction), *aff'd*, 28 F.3d 113 (10th Cir.1994). In creating a new remedy the General Assembly did not by implication grant political subdivisions of the state the right to sue the state.

The district notes that special districts have filed civil actions seeking declaratory relief against other special districts. *See Bancroft–Clover Water and Sanitation Dist. v. Metro. Denver Sewage Disposal Dist. No. 1,* 670 P.2d 428 (Colo.App.1983) (special district may initiate a declaratory judgment action to determine its rights under an agreement with another special district); *Alameda Water & Sanitation Dist. v. Bancroft Fire Protection Dist.,* 32 Colo.App. 350, 513 P.2d 728 (1973) (trial court erred in dismissing declaratory judgment action brought by water and sanitation district against fire protection district). In these cases, however, the special district plaintiffs had interests distinct from and in conflict with the interests of the special district defendants. These cases do not support the district's argument that it has standing to obtain a declaratory judgment against the state.

■ C.R.C.P. 57 provides in pertinent part as follows:

(a) **Power to Declare Rights, etc.; Force of Declaration.** District and superior courts within their respective jurisdictions shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.... The declaration ... shall have the force and effect of a final judgment or decree.

(b) **Who May Obtain Declaration of Rights.** Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

. . . .

(k) **Rule is Remedial; Purpose.** This Rule is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered.

. . . .

C.R.C.P. 57. C.R.C.P. 57 establishes the procedural mechanism for implementation of the Declaratory Judgment Act. C.R.C.P. 57(k) expressly provides that the rule is remedial. The rule neither expressly nor by implication expands the interests of parties, governmental or private, who seek the benefits of the remedy established thereby. *See Fifty–First Gen. Assembly,* 198 Colo. at 305 n. 1, 307–08, 599 P.2d at 889 n. 1, 891.

Neither the Declaratory Judgment Act nor C.R.C.P. 57 confers standing on the district to seek relief against the state. Therefore, to pursue this civil action against the state, the district must demonstrate an independent source of authority to establish standing to sue the state. *Fifty–First Gen. Assembly,* 198 Colo. at 305 n. 1, 599 P.2d at 889 n. 1.

D

■ The district contends that sections 32–1–1001(1)(c) and (n), 13 C.R.S. (1994 Supp.), of the Special District Act grant express or implied authority to special districts to seek declaratory judgment relief against the state. We disagree.

The district, as a political subdivision of the state pursuant to section 32–1–1601, 13 C.R.S. (1994 Supp.),[7] possesses only those powers that are expressly conferred upon it by the constitution and by statute and such incidental implied powers as are reasonably necessary to carry out the express powers so conferred. *Love,* 172 Colo. at 125, 470 P.2d at 861. The powers exercisable by the dis-

---

7. Section 32–1–1601 provides in pertinent part as follows:

The general assembly hereby finds and declares that special districts are political subdi-
visions and instrumentalities of the state of Colorado and local governments thereof....
§ 32–1–1601, 13 C.R.S. (1994 Supp.).

trict are set forth in the Special District Act, §§ 32–1–101 to –1605, 13 C.R.S. (1994 Supp.). Section 32–1–1001(1) thereof provides in pertinent part as follows:

> **Common powers.** (1) For and on behalf of the special district the board has the following powers:
>
> . . . .
>
> (c) To *sue and be sued* and to be a party to suits, actions, and proceedings;
>
> . . . .
>
> (n) To have and exercise all rights and powers necessary or incidental to or implied from the specific powers granted to special districts by this article. Such specific powers shall not be considered as a limitation upon any power necessary or appropriate to carry out the purposes and intent of this article.

§ 32–1–1001(1), 13 C.R.S. (1994 Supp.) (emphasis added).

The district contends that the power to sue and be sued conferred upon it by section 32–1–1001(1)(c) constitutes an express grant of authority to file this action against the state. It also asserts that the initiation of this suit constitutes an exercise of the implied power referred to in the language of section 32–1–1001(1)(n).

We considered and rejected a similar argument in *Love*, 172 Colo. 121, 470 P.2d 861. In *Love*, the Delores County Board of County Commissioners filed a civil action requesting the trial court to issue a writ of mandamus prohibiting the State Board of Equalization and the Colorado Tax Commission from reviewing certain property appraisals of the county assessor and from ordering certain reappraisals. In his capacity as the representative of the state, the defendant Governor, John Love, moved to dismiss the case for lack of standing. The trial court granted the motion and we affirmed the trial court's judgment. In so doing, we rejected the Board of County Commissioners' argument that provisions of 1963 C.R.S. sections 36–1–1(1)(b) and –7(6), granting counties the power to "sue and be sued" and to "represent the county," constituted express or implied grants of authority to counties to sue the state.[8] *Love*, 172 Colo. at 125–26, 470 P.2d at 863. We concluded that the power to sue and be sued granted by section 36–1–1(1)(b) to the counties could be exercised only within the framework of the specific powers granted to the counties by sections 36–1–1 and 36–1–7 and did not include the authority to sue the state. *Love*, 172 Colo. at 126, 470 P.2d at 863.

Our decision in *Love* is controlling here. The authority granted to the district by section 32–1–1001(1)(c) enables the district to initiate civil litigation only as an incident of the exercise of specific authority granted to it by the Special District Act. The district has no greater inherent authority in this area than it has express authority. Contrary to the district's argument, the Special District Act does not grant it express or implied authority to file a civil action against the state for declaratory relief.

### III

For the foregoing reasons, we conclude that the district lacks standing to file this declaratory judgment action against the state. We therefore make absolute the rule to show cause previously issued herein, and return the case to the trial court with directions to dismiss the case for lack of jurisdiction.

---

8. Section 36–1–1 provided in pertinent part as follows:

> (1)(a) Each organized county within the state shall be a body corporate and politic, and as such shall be empowered for the following purposes:
>
> (b) To sue and be sued;
>
> . . . .

1963 C.R.S. 36–1–1(1)(a), (b). This section is substantially similar to § 32–1–1001(1)(c), 13 C.R.S. (1994 Supp.), of the Special District Act.

Section 36–1–7 provided in pertinent part as follows:

> (1) The board of county commissioners of each county shall have power at any meeting:
>
> . . . .
>
> (6) To represent the county and have the care of the county property and management of the business and concerns of the county, in all cases where no other provisions are made by law.

1963 C.R.S. 36–1–7.