216 P.3d 29 (2008)
Anthony LOBATO, as an individual and as parent and natural guardian of Taylor Lobato and Alexa Lobato; Denise Lobato, as an individual and as parent and natural guardian of Taylor Lobato and Alexa Lobato; Jaime Hurtado and Coralee Hurtado, as individuals and as parents and natural guardians of Maria Hurtado and Evan Hurtado; Janet L. Kuntz, as an individual and as parent and natural guardian of Daniel Kuntz and Stacey Kuntz; Pantaleon Villagomez and Maria Villagomez, as individuals and as parents and natural guardians of Chris Villagomez, Monique Villagomez and Angel Villagomez; Linda Warsh, as an individual and as parent and natural guardian of Adam Warsh, Karen Warsh and Ashley Warsh; Elaine Gerdin, as an individual and as parent and natural guardian of N.T., J.G. and N.G.; Dawn Hartung, as an individual and as parent and natural guardian of Q.H.; Paul Lastrella, as an individual and as parent and natural guardian of B.L.; Woodrow Longmire, as an individual and as parent and natural guardian of Tianna Longmire; Steve Seibert and Dana Seibert, as individuals and as parents and natural guardians of Rebecca Seibert and Andrew Seibert; Olivia Wright, as an individual and as parent and natural guardian of A.E. and M.E.; Herbert Conboy and Victoria Conboy, as individuals and as parents and natural guardians of Tabitha Conboy and Timothy Conboy; Terry Hart, as an individual and as parent and natural guardian of Katherine Hart; Larry Howe-Kerr and Kathy Howe-Kerr, as individuals and as parents and natural guardians of Lauren Howe-Kerr and Luke Howe-Kerr; John T. Lane, as an individual; Jennifer Pate, as an individual and as parent and natural guardian of Ethan Pate and Evelyn Pate; Robert L. Podio and Blanche J. Podio, as individuals and as parents and natural guardians of Robert Podio and Samantha Podio; Tami Quandt, as an individual and as parent and natural guardian of Brianna Quandt, Cody Quandt and Levi Quandt; Brenda Christian, as an individual and as parent and natural guardian of Ryan Christian; Toni L. McPeek, as an individual and as parent and natural guardian of M.J. McPeek, Cassie McPeek and Michael McPeek; Christine Tiemann, as an individual and as parent and natural guardian of Emily Tiemann and Zachary Tiemann; Paula VanBeek, as an individual and as parent and natural guardian of Kara VanBeek and Antonius VanBeek; Larry Haller and Pennie Haller, as individuals and as parents and natural guardians of Kelly Haller and Brandy Haller; Tim Hunt and Sabrina Hunt, as individuals and as parents and natural guardians of Shannon Moore-Hiner, Eris Moore, Darean Hunt and Jeffrey Hunt; Mike McCaleb and Julie McCaleb, as individuals and as parents and natural guardians of Rebekka McCaleb, Layne McCaleb and Lynde McCaleb; Todd Thompson and Judy Thompson, as individuals and as parents and natural guardians of Garson Thompson and Tarek Thompson; Doug Vondy and Denise Vondy, as individuals and as parents and natural guardians of Kyle Leaf and Hannah Vondy; Brad Weisensee and Traci Weisensee, as individuals and as parents and natural guardians of Joseph Weisensee, Anna Weisensee, Amy Weisensee and Elijah Weisensee; Stephen Topping, as an individual and as parent and natural guardian of Michael Topping; Donna Wilson, as an individual and as parent and natural guardian of Ari Wilson, Sarah Patterson, Madelyn Patterson and Taren Wilson-Patterson; David Maes, as an individual and as parent and natural guardian of Cherie Maes; Debbie Gould, as an individual and as parent and natural guardian of Hannah Gould, Ben Gould and Daniel Gould; Lillian Leroux, as an individual and natural guardian of Ari Leroux, Lillian Leroux, Ashley Leroux, Alexandria Leroux and Amber Leroux; Theresa Wrangham, as an individual and *30 natural guardian of Rachel Wrangham and Deanna Wrangham; Alamosa School District, No. RE-11J; Centennial School District No. R-1; Center Consolidated School District No. 26 JT, of the Counties of Saguache and Rio Grande and Alamosa; Creede Consolidated School District No. 1 in the County of Mineral and State of Colorado; Del Norte Consolidated School District No. C-7; Moffat School District No. 2, in the County of Saguache and State of Colorado; Monte Vista School District No. C-8; Mountain Valley School District No. RE 1; North Conejos School District No. RE-1J; Sanford School District No. 6, in the County of Conejos and State of Colorado; Sangre de Cristo School District, No. RE-22J; Sargent School District No. RE-33J; Sierra Grande School District No. R-30; and South Conejos School District No. RE 10, Plaintiffs-Appellants,
v.
STATE of Colorado; Colorado State Board of Education; William J. Moloney, in his official capacity as Commissioner of Education of the State of Colorado; and Bill Ritter, in his official capacity as Governor of the State of Colorado, Defendants-Appellees.
No. 06CA0733.
Colorado Court of Appeals, Div. IV.
January 24, 2008.
Certiorari Granted September 15, 2008.
*32 Alexander Halpern, LLC, Alexander Halpern, Kathleen J. Gebhardt, Michelle Murphy, Boulder, Colorado, for Plaintiffs-Appellants.
John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, John R. Sleeman, Jr., First Assistant Attorney General, Antony B. Dyl, Assistant Attorney General, Denver, Colorado, for Defendants-Appellees.
Davis Graham & Stubbs, LLP, Kenzo S. Kawanabe, Ryan Lessmann, Denver, Colorado, for Amicus Curiae Great Education Colorado.
Lauren B. Kingsbery, Valerie L. Simons, Denver, Colorado, for Amicus Curiae Colorado Association of School Boards and Colorado Association for School Executives.
Martha R. Houser, Denver, Colorado, for Amicus Curiae Colorado Education Association.
Opinion by Judge WEBB.
This case questions the adequacy of Colorado's school finance system under the state constitution. Plaintiffs, Anthony Lobato, as an individual and as a parent and natural guardian of Taylor and Alexa Lobato, and forty-six other persons in their capacities as taxpayers and parents of children in various Colorado school districts (parents), together with fourteen school districts in the San Luis Valley (school districts), appeal the judgment in favor of defendants, State of Colorado, Colorado State Board of Education, William J. Moloney, in his official capacity as Commissioner of Education of the State of Colorado, and Bill Ritter, in his official capacity as Governor of the State of Colorado, dismissing the complaint for lack of standing and failure to state a claim.
We conclude that as political subdivisions, the school districts lack standing, and that the parents' challenge to the adequacy of school financing is a nonjusticiable political question. Having so concluded, we do not decide whether the parents' claims, if justiciable, are nevertheless precluded by Colorado Constitution article IX, section 17 (Amendment 23). Therefore, we affirm.

I. Background

A. Colorado Constitutional Provisions
Three constitutional provisions are at issue in this case: (1) article IX, section 15 (Local Control Clause); (2) article IX, section 2 (Education Clause); and (3) Amendment 23.
The Local Control Clause states in relevant part: "The general assembly shall ... provide for organization of school districts... in each of which shall be established a board of education, to consist of three or more directors.... Said directors shall have control of instruction in the public schools of their respective districts."
The Education Clause states in relevant part: "The general assembly shall ... provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously."
Amendment 23 states in relevant part:
(1).... In state fiscal year 2001-2002 through state fiscal year 2010-2011, the statewide base per pupil funding ... for public education ... and total state funding for all categorical programs shall grow annually at least by the rate of inflation plus an additional one percentage point....
(2).... "Categorical programs" include transportation programs, English language proficiency programs, expelled and at-risk student programs, special education programs (including gifted and talented programs), suspended student programs, vocational education programs, small attendance centers, comprehensive health education programs, and other current and future accountable programs specifically identified in statute as a categorical program....
(3).... [T]he general assembly may annually appropriate, and school districts may annually expend, monies from the state education fund created....

*33 (4) (b).... Monies in the state education fund may only be used to comply with subsection (1) [categorical programs] and for accountable education reform, for accountable programs to meet state academic standards, for class size reduction, for expanding technology education, for improving student safety, for expanding the availability of preschool and kindergarten programs, for performance incentives for teachers, for accountability reporting, or for public school building capital construction.

B. Plaintiffs' Allegations
Plaintiffs alleged that (1) the current school finance system violates the mandate of a "thorough and uniform" public education system under the Education Clause; (2) the General Assembly has enacted education reform legislation imposing state-wide education standards and instructional goals which were established without determining whether sufficient financial resources exist to accomplish those goals; and (3) the school finance system fails to provide sufficient funding to permit school districts either to meet accountability standards and goals, or to provide necessary staffing, services, programs, and facilities to fulfill the goals under federal and state education reform legislation.
Plaintiffs sought a declaration that (1) the Education Clause requires the General Assembly to "provide the financial resources necessary, sufficient, and appropriate to assure that all [school-age children] have an equal opportunity to obtain a constitutionally adequate, quality education"; (2) the school finance system fails to provide funding in an amount and manner to meet the mandate of the Education Clause; and (3) the school finance system violates the rights and authority of the school districts' local boards of education as provided in the Local Control Clause.
They also sought an injunction compelling defendants to design, enact, fund, and implement a school finance system that provides sufficient funding to maintain a thorough and uniform system of free public schools, and prohibiting defendants from further executing and implementing the current school finance system. Finally, they asked the trial court to retain jurisdiction over the matter until defendants have complied.

C. Defendants' Response
Defendants moved to dismiss under C.R.C.P. 12(b)(1) and 12(b)(5). Defendants asserted that, as political subdivisions, the school districts lacked standing because they cannot challenge statutes directing the performance of their duties; that plaintiffs presented a nonjusticiable political question because the Colorado Constitution commits the determination of educational adequacy to the General Assembly and judicial standards for measuring educational adequacy do not exist; that by adopting Amendment 23, the voters have exercised their constitutional authority to determine the constitutionally required level of state funding; and that the school finance system satisfies Amendment 23. They make the same arguments on appeal.

D. Trial Court's Judgment
The trial court dismissed plaintiffs' claims without taking evidence. It concluded that the funding levels dictated by Amendment 23 were consistent with the Education Clause; that because the school finance system is in accord with Amendment 23, their claims were nonjusticiable; and that as political subdivisions, the school districts lacked standing. The court did not define the phrase "thorough and uniform" contained within the Education Clause.

II. Standard of Review
C.R.C.P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Egle v. City & County of Denver, 93 P.3d 609, 611 (Colo.App.2004). A court may determine the jurisdictional issue as a matter of law if it accepts all the plaintiff's assertions of fact as true. Hansen v. Long, 166 P.3d 248, 250 (Colo.App.2007). On appeal from a dismissal for lack of subject matter jurisdiction, we review a trial court's factual findings for clear error and its legal conclusions de novo. Egle, 93 P.3d at 611.
*34 A C.R.C.P. 12(b)(5) motion to dismiss tests the sufficiency of the complaint. Wagner v. Grange Ins. Ass'n, 166 P.3d 304, 306 (Colo. App.2007). A reviewing court must "accept all matters of material fact in the complaint as true and view the allegations in the light most favorable to the plaintiff." Id. at 306-07 (quoting BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 71 (Colo.2004)). A C.R.C.P. 12(b)(5) motion should only be granted when "the plaintiff's factual allegations cannot support a claim as a matter of law." Id. at 307 (quoting BRW, 99 P.3d at 71).
We review such a ruling de novo. Id. Notwithstanding the allegations of a complaint, interpretation of a constitutional provision remains a question of law that we also review de novo. See Bd. of County Comm'rs v. City & County of Broomfield, 62 P.3d 1086, 1088, 1091 (Colo.App.2002)(motion for judgment on the pleadings).

III. Standing
Standing is a limitation on a court's subject matter jurisdiction that we review de novo. People in Interest of J.C.S., 169 P.3d 240, 243 (Colo.App.2007); First Horizon Merch. Servs., Inc. v. Wellspring Capital Mgmt., LLC, 166 P.3d 166, 180 (Colo.App. 2007). It has been described as a component of justiciability. City of Greenwood Village v. Petitioners for Proposed City of Centennial, 3 P.3d 427, 436 (Colo.2000).
A plaintiff has standing if (1) the plaintiff suffered an actual injury (2) to a legally protected interest. Ainscough v. Owens, 90 P.3d 851, 855 (Colo.2004); J.C.S., 169 P.3d at 245.
"A plaintiff satisfies the injury in fact requirement by demonstrating that the activity complained of has caused or has threatened to cause injury to the plaintiff...." J.C.S., 169 P.3d at 245 (quoting Dunlap v. Colo. Springs Cablevision, Inc., 829 P.2d 1286, 1289 (Colo.1992)). The injury-in-fact limitation is necessary under the separation of powers doctrine in the Colorado Constitution. Ainscough, 90 P.3d at 856.
The legally protected interest requirement presents the question whether the plaintiff has a claim for relief under the constitution, the common law, a statute, a rule, or a regulation. Id.

A. School Districts' Standing
The school districts contend the trial court erred when it concluded that, as political subdivisions, they lack standing. We disagree.
A political subdivision lacks standing to challenge the constitutionality of a statute concerning its performance. Denver Ass'n for Retarded Children, Inc. v. Sch. Dist. No. 1, 188 Colo. 310, 316, 535 P.2d 200, 204 (1975); Clear Creek Sch. Dist. RE-1 v. Holmes, 628 P.2d 154, 155 (Colo.App.1981).
A school district is a subordinate division of the state, exercising authority to effectuate the state's education purposes. Holmes, 628 P.2d at 155; Bagby v. Sch. Dist. No. 1, 186 Colo. 428, 435, 528 P.2d 1299, 1302 (1974).
An exception to the political subdivision rule is recognized when the constitution or a statute grants a political subdivision express or implied authority to file a civil action against the state. Romer v. Fountain Sanitation Dist., 898 P.2d 37, 40 (Colo.1995); see also East Grand County Sch. Dist. No. 2 v. Town of Winter Park, 739 P.2d 862, 865 (Colo.App.1987) (school district had standing to challenge enactment of urban renewal plan because a statute allowed "an affected school district to participate in an advisory capacity with respect to the implementation of tax increment financing in an urban renewal project").
We reject the school districts' assertion that this exception applies because the Local Control Clause vests in them a legally protected interest in controlling instruction in schools, including funding.
The Local Control Clause links control over instruction to locally raised funds, not to state funding. See Owens v. Colorado Congress of Parents, Teachers & Students, 92 P.3d 933, 943 (Colo.2004) (state program requiring school districts to pay funds from locally raised tax revenues to parents, who then must pay those funds to nonpublic *35 schools, denied local school districts discretion to allocate locally raised funds under the Local Control Clause); Lujan v. Colorado State Bd. of Educ., 649 P.2d 1005, 1023 (Colo.1982)(Local Control Clause protects school districts against legislative efforts to require them to spend locally raised funds on instruction that the school district does not control); Belier v. Wilson, 59 Colo. 96, 98, 147 P. 355, 356 (1915) (taxes raised in one school district cannot be used to fund a school in another district under the Local Control Clause).
Therefore, we conclude that the trial court properly dismissed the school districts for lack of standing because the Local Control Clause does not give them authority to challenge how the General Assembly appropriates state funds to finance education.

B. Parents' Standing
The jurisdictional nature of standing permits a judicial inquiry, even if lack of standing was not raised by the parties. Romer v. Bd. of County Comm'rs, 956 P.2d 566, 586 (Colo.1998); J.C.S., 169 P.3d at 244. We address sua sponte whether the parents have standing, and conclude that they do.

1. Injury-in-Fact
"To determine whether there is an injury-in-fact, we accept as true the allegations set forth in the complaint." Ainscough, 90 P.3d at 857. Parents can sue on behalf of their children. See Bartlett v. Elgin, 973 P.2d 694, 697 (Colo.App.1998), aff'd, 994 P.2d 411 (Colo.1999).
Here, the parents allege that the cost of educating students in accordance with the Education Clause and education reform legislation exceeds the maximum amount of funding available under the current school finance system, and thus without sufficient financial resources, students do not have adequate access to (1) instructional materials (i.e., textbooks, computers, software, audio-visual equipment, and library books) and (2) programs and services for underserved and at-risk students, gifted and talented students, and non-college bound students.
Accepting these allegations as true, we conclude that inadequate access to public education is an injury-in-fact. See Ainscough, 90 P.3d at 856 (Colorado case law provides "broad taxpayer standing in the trial and appellate courts"; standing is conferred when "a plaintiff argues that a governmental action that harms [the plaintiff] is unconstitutional"); Barber v. Ritter, 170 P.3d 763, 768 (Colo.App.2007) (cert. granted Nov. 13, 2007) ("In cases involving a taxpayer's standing, general allegations of injury are sufficient....").

2. Legally Protected Interest
An interest is legally protected if the constitution, the common law, a statute, a rule, or a regulation provides the plaintiff with a claim for relief. Ainscough, 90 P.3d at 856. This interest may be "having a government that acts within the boundaries of our state constitution." Id.
According to the parents, the Education Clause gives children a legally protected interest in a "thorough and uniform" free public school education system that guarantees them "a constitutionally adequate, quality public education." Under the parents' interpretation of the Education Clause, they have identified a legally protected interest at issue. See Dunlap, 829 P.2d at 1289 (whether a plaintiff has standing is inextricably tied to the merits of the case); Wilson v. Prentiss, 140 P.3d 288, 290 (Colo.App.2006)("Standing is a threshold jurisdictional question that must be determined before a case may be decided on the merits.").
Thus, having subject matter jurisdiction because of the parents' standing, we turn to the political question limitation on justiciability. Because we have concluded that only the parents have standing, the remainder of this opinion is limited to their allegations.

IV. Justiciability
We conclude that the parents' claims are barred by the political question doctrine, but unlike the trial court, we do not rely on Amendment 23.

*36 A. Lujan and Justiciability
Initially, we reject the parents' argument that Lujan impliedly establishes claims concerning the quality and level of funding under the Education Clause to be justiciable.
The majority opinion does not mention justiciability. Although the Lujan court exercised jurisdiction, "there is a significant difference between determining whether a ... court has `jurisdiction of the subject matter' and determining whether a cause over which a court has subject matter jurisdiction is `justiciable.'" Powell v. McCormack, 395 U.S. 486, 512, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (citing Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).
In Baker, the Supreme Court explained the distinction between "lack of federal jurisdiction" and "inappropriateness of subject matter for judicial consideration." See Nebraska Coalition for Educ. Equity & Adequacy v. Heineman, 273 Neb. 531, 731 N.W.2d 164, 174-75 (2007). "Unlike the standing doctrine of justiciability, the political question doctrine is not entangled with subject matter jurisdiction." Id. at 175 (citing Powell and Baker)(footnote omitted).

B. The Majority Rule
The parents assert that the trial court disregarded the "overwhelming majority" of jurisdictions which have held that challenges to their states' school finance systems under the relevant education clauses are justiciable. They cite to Neeley v. West Orange-Cove Consolidated Independent School District, 176 S.W.3d 746, 780-81 nn. 182-83 (Tex. 2005), as demonstrating that states addressing this issue are split fifteen to four in their favor.
Based on our review of this authority (see Appendix A), we feel no compulsion to follow the majority rule because of anomalies such as the following:
 The constitutions of Idaho, New Jersey, Pennsylvania, Ohio, West Virginia, and Wyoming include the word "thorough." Of these states, only Pennsylvania has held the funding dispute nonjusticiable. But in New Jersey, West Virginia, and Wyoming, education is a fundamental constitutional right. By contrast, the Lujan majority held that "[a] heartfelt recognition and endorsement of the importance of an education does not elevate a public education to a fundamental interest warranting strict scrutiny." 649 P.2d at 1018.
 The constitutions of Arkansas, Florida, Kentucky, and Illinois contain the term "efficient," but not "thorough." These states are evenly split on justiciability.
 Language most consistent with a qualitative guarantee ("high quality") appears in the constitutions of Florida and Illinois, but both states have ruled the funding issue nonjusticiable.
 The constitutions of Massachusetts and New Hampshire contain only very general language ("to cherish the interests of literature and the sciences"), but both states have found justiciability.
 Comparably amorphous language appears in the constitutions of Nebraska ("free instruction in the common schools") and Oklahoma ("a system of free public schools"), but neither state has found justiciability.
In our view, none of these terms has sufficient intrinsic meaning to explain such different resolutions of similar funding claims. We perceive that these diverse outcomes are not based on the constitutional language at issue alone, but often "revolve around policy choices and value determinations." Heineman, 731 N.W.2d at 177 (citing Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986)).
Instead of dealing with "policy choices and value determinations," we adopt the minority view that such claims raise a nonjusticiable political question because, as discussed in the remainder of this section IV, that view is more consistent with the principle of judicial restraint. See People v. Summit, 183 Colo. 421, 426, 517 P.2d 850, 853 (1974)(refusing to strike the statutory classification of marijuana as a narcotic because it was "a matter strictly for the legislature"); cf. Deriso v. Cooper, 246 Ga. 540, 272 S.E.2d 274, 277 (1980) (declining to address "the myriad other matter involved in everyday administration *37 of a public school system which the courts would face were they to embark upon the course of judicial activism desired by the school patrons. Resolution of these discretionary policy determinations can best be made by other branches of government.").

C. Nonjusticiable Political Question
Baker sets forth six independent factors to review in determining whether a nonjusticiable political question has been raised: (1) "a textually demonstrable constitutional commitment of the issue to a coordinate political department"; or (2) "a lack of judicially discoverable and manageable standards for resolving it"; or (3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion"; or (4) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government"; or (5) "an unusual need for unquestioning adherence to a political decision already made"; or (6) "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." Vieth v. Jubelirer, 541 U.S. 267, 277-78, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004)(quoting Baker, 369 U.S. at 217, 82 S.Ct. 691); Meyer v. Lamm, 846 P.2d 862, 872-73 (Colo.1993).
These factors are "probably listed in descending order of both importance and certainty." Vieth, 541 U.S. at 277, 124 S.Ct. 1769. A court should not dismiss a case for lack of justiciability "[u]nless one of these formulations is inextricable from the case at bar." Baker, 369 U.S. at 217, 82 S.Ct. 691; see Schneider v. Kissinger, 412 F.3d 190, 194 (D.C.Cir.2005)("To find a political question, we need only conclude that one factor is present, not all."). Claims that present a political question must be dismissed. See 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3534.3 (2007).
For the following reasons, we conclude that the first through fourth Baker factors apply to this case, and therefore we agree with the trial court's dismissal.

1. Textually Demonstrable Constitutional Commitment of Issue to Coordinate Political Department
The General Assembly has plenary power to enact legislation, including appropriations. Colo. Const. art. 5, § 32; Colorado Gen. Assembly v. Owens, 136 P.3d 262, 266 (Colo. 2006); Barber, 170 P.3d at 774. In addition, the Education Clause specifically directs the General Assembly to establish and maintain the system of free public education. Hence, "the fashioning of a constitutional system for financing elementary and secondary public education in Colorado is not only the proper function of the General Assembly, but this function is expressly mandated by the Colorado Constitution." Lujan, 649 P.2d at 1024.

2. Lack of Judicially Discoverable and Manageable Standards for Resolving Issue
"[L]ack of judicially manageable standards may strengthen the conclusion that there is a textually demonstrable commitment to a coordinate branch." Nixon v. United States, 506 U.S. 224, 228-29, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993). Thus, we consider the meaning of "thorough and uniform," on which the parents base their claims, but discern in this language no such "manageable standards" for determining a qualitative educational guarantee, as the parents assert, with which a trial court could measure the constitutional adequacy of funding for education.
Under article VI, section 1 of the Colorado Constitution, the judicial branch is empowered to construe the constitution's meaning. Bd. of County Comm'rs v. Vail Assocs., Inc., 19 P.3d 1263, 1272 (Colo.2001).
We afford constitutional language its ordinary and common meaning; where the language is clear, we interpret it as written. Washington County Bd. of Equalization v. Petron Dev. Co., 109 P.3d 146, 149 (Colo.2005). We construe constitutional provisions as a whole, giving effect to every word whenever possible. Id.
In addressing the meaning of the Education Clause, the parties cite no constitutional history. Nor did the court in Lujan *38 "find any historical background to glean guidance regarding the intention of the framers" regarding the meaning of "thorough and uniform." 649 P.2d at 1024-25.
The Education Clause contains two operative terms: thorough and uniform. "Thorough" is defined as "marked by completeness" and "carried through to completion esp. [sic] with full attention to details." Webster's Third New International Dictionary 2380 (2002). "Uniform" is defined as "marked by lack of variation, diversity, change in form, manner, worth, or degree." Id. at 2498.
The ordinary meaning of those words does not provide a standard to determine whether there is a qualitative educational guarantee urged by the parents. See Gresh v. Balink, 148 P.3d 419, 423 (Colo.App.2006)("[I]nterpretation cannot solve the lack of clarity or definition in the constitutional provision itself. Instead, that uncertainty is for the General Assembly to elucidate with implementing language or, ultimately, for the voting public to ameliorate by amending the constitutional provision.").
Lujan does not support finding such a standard in the term "uniform." Although the Lujan court addressed only equal protection under the Education Clause, it determined that a "thorough and uniform" system did not require identical per pupil educational expenditures. 649 P.2d at 1025.
The Lujan majority explained that the Education Clause "mandates the General Assembly to provide to each school age child the opportunity to receive a free education, and to establish guidelines for a thorough and uniform system of public schools." Id. at 1018-19 (emphasis added). The reference to "guidelines" in Lujan weighs against interpreting "thorough and uniform" as providing the means to define any such qualitative educational guarantee. See Webster's Third New International Dictionary at 1009 ("guideline: ... (c) an indication or outline of future policy or conduct (as of a government)"); cf. Jaynes v. Centura Health Corp., 148 P.3d 241, 249 (Colo.App.2006)(employment performance policy setting forth "guidelines" gave management discretion in dealing with unacceptable employee behavior but did not create an enforceable right).
We are not persuaded otherwise by the parents' reliance on cases such as Fangman v. Moyers, 90 Colo. 308, 311-12, 8 P.2d 762, 764 (1932), which merely stand for the proposition that the Education Clause assures all children access to free instruction in public schools. The parents do not assert that the school finance system fails to provide resources essential to free basic instruction. Rather, they argue that the system is unconstitutional because it does not provide "a constitutionally adequate, quality public education." (Emphasis added.)
But the contours of a "quality" public education cannot be ascertained by judicially discoverable or manageable standards because the Education Clause "provides no principled basis for a judicial definition." Comm. for Educ. Rights v. Edgar, 174 Ill.2d 1, 220 Ill.Dec. 166, 672 N.E.2d 1178, 1191 (1996).
Although the Edgar court dealt with constitutional language involving an "efficient system of high quality public educational institutions," such language is less amorphous than "thorough and uniform." Nevertheless, that court explained:
It would be a transparent conceit to suggest that whatever standards of quality courts might develop would actually be derived from the constitution in any meaningful sense. Nor is education a subject within the judiciary's field of expertise.... Rather, the question of educational quality is inherently one of policy involving philosophical and practical considerations that call for the exercise of legislative and administrative discretion.
To hold that the question of educational quality is subject to judicial determination would largely deprive the members of the general public of a voice in a matter which is close to the hearts of all individuals in Illinois.... In contrast, an open and robust public debate is the lifeblood of the political process in our system of representative democracy. Solutions to problems of educational quality should emerge from a spirited dialogue between the people of the State and their elected representatives.
*39 Id.; see also Heineman, 731 N.W.2d at 180 ("We interpret the paucity of standards in the free instruction clause as the framers' intent to commit the determination of adequate school funding solely to the legislature's discretion, greater resources, and expertise.").
Cases from other jurisdictions such as Idaho, New Jersey, Ohio, and Wyoming, which in addressing similar claims have defined "thorough" based on constitutional history and legislative definitions of constitutional language, are inapposite because these extrinsic resources do not exist in Colorado. (See Appendix B.)
Even without such extrinsic resources, some courts have arrived at different definitions of "thorough," and those disparate definitions have had a significant impact on the courts' interpretation of whether a legislative obligation exists to fund a certain level of quality in public education. Compare Robinson v. Cahill, 118 N.J.Super. 223, 287 A.2d 187, 211 (Law Div.1972) ("thorough" means "more than simply adequate or minimal"), modified, 62 N.J. 473, 303 A.2d 273 (1973), and Idaho Sch. for Equal Educ. Opportunity v. State, 132 Idaho 559, 976 P.2d 913, 920 (1998) ("Even without these expressions from the Legislature and the State Board, ... we conclude that a safe environment conducive to learning is inherently a part of a thorough system of public, free common schools...."), with Pauley v. Kelly, 162 W.Va. 672, 255 S.E.2d 859, 877 (W.Va.1979) (a system of schools that "develops, as best the state of education expertise allows, the minds, bodies and social morality of its charges to prepare them for useful and happy occupations, recreation and citizenship, and does so economically" (emphasis added)).
We are unable to discern any textual basis for these different definitions. Cf. Fraternal Order of Police, Colo. Lodge No. 27 v. City & County of Denver, 926 P.2d 582, 591 (Colo.1996)(noting "direct textual support in the Colorado constitution"). The absence of textual support again suggests that these courts are making policy choices based on value judgments. See Heineman, 731 N.W.2d at 177. We do not perceive policy arguments as a sufficient basis for divining constitutional standards that a trial court could use to assess the adequacy of educational funding.
Nevertheless, the parents assert that declining to find a qualitative educational guarantee in the Education Clause would abrogate the judicial branch's obligation to interpret the constitution. To the contrary, we have considered the meaning of "thorough and uniform," and have concluded that this language does not provide any manageable standard for determining the qualitative guarantee asserted by the parents as a method of assessing adequate funding.

3. Impossibility of Deciding Issue Without Making Policy Determinations Requiring Nonjudicial Discretion
A court must not make or weigh policy. Town of Telluride v. Lot Thirty-Four Venture, L.L.C., 3 P.3d 30, 38 (Colo. 2000); Concerned Parents of Pueblo, Inc. v. Gilmore, 47 P.3d 311, 313 (Colo.2002); see also Martin v. Union Pac. R.R. Co., 186 P.3d 61, 68 (Colo.App.2007)("[P]olicy judgments are the exclusive province of the General Assembly.").
The Lujan majority recognized that the "best public policy which can be adopted to attain quality school and equal educational opportunity for all children" lies within the General Assembly's domain. 649 P.2d at 1018; cf. Denver Parents Ass'n v. Denver Bd. of Educ., 10 P.3d 662, 665 (Colo.App. 2000) ("Plaintiffs cannot hold a public school district to the implementation of its educational objectives in a judicial setting.... [S]uch policy issues should be addressed at the ballot box, not presented as a judicially enforceable contract claim.").
The Lujan majority rejected a "direct correlation between school financing and educational quality and opportunity" as the basis for a decision, explaining that any such correlation involved "the realm of social policy." 649 P.2d at 1018. Because the relationship between school funding and educational quality also requires weighing federal and state mandates under the education reform legislation, school districts' local efforts, and the State's ability to provide funding, courts cannot *40 "make that determination without deciding matters of educational policy in disregard of the policy and fiscal choices" already made by the General Assembly. Heineman, 731 N.W.2d at 183; see also Edgar, 220 Ill.Dec. 166, 672 N.E.2d at 1191 ("Solutions to problems of educational quality should emerge from a spirited dialogue between the people of the State and their elected representatives."); Oklahoma Educ. Ass'n v. State ex rel. Oklahoma Legislature, 158 P.3d 1058, 1066 (Okla.2007)("To do as plaintiffs ask would require this court to invade the Legislature's power to determine policy. This we are constitutionally prohibited from doing."); Marrero v. Commonwealth, 559 Pa. 14, 739 A.2d 110, 111 (1999)("[I]t would be impossible to resolve the claims without making an initial policy determination of a kind which is clearly of legislative, and not judicial, discretion.").

4. Impossibility of Resolving Issue Without Disregarding General Assembly's Authority
Finding and enforcing the parents' standard of a "constitutionally adequate, quality public education" would "present a substantial risk of judicial intrusion into the powers and responsibilities" of the General Assembly. Coalition for Adequacy & Fairness in Sch. Funding, Inc. v. Chiles, 680 So.2d 400, 408 (Fla.1996). Determining the changes necessary to the school finance system would require a court to weigh the General Assembly's judgments as to both education reform and financing. Hence, such evaluation of the General Assembly's action or inaction as to school financing "would, in order to be effective, necessarily involve a usurpation of that power entrusted exclusively to the Legislature." Ex parte James, 836 So.2d 813, 818 (Ala.2002).
Moreover, because of the funding limitations in Colorado Constitution article X, section 20, the Taxpayer's Bill of Rights (TABOR), a judicial requirement of additional school funding could force the General Assembly to reduce general fund appropriations in other areas. Such action would embroil the courts in the appropriation and budgeting process. Cf. Chiles, 680 So.2d at 406-07 (refusing to declare that the present school funding level was constitutionally inadequate because "the courts would necessarily be required to subjectively evaluate the Legislature's value judgments as to the spending priorities to be assigned to the state's many needs, education being one among them").

5. Baker Factors (5) and (6)
The remaining Baker factors have not been discussed in any Colorado case, nor are they well defined in federal precedent or secondary authority. 13A Federal Practice and Procedure § 3534. We decline to address these factors because even one factor is sufficient to find that a political question exists, and we have concluded that the first through fourth factors apply. See Schneider, 412 F.3d at 194.
In sum, "[d]eciding whether a matter has ... been committed by the Constitution to another branch of government ... is itself a delicate exercise in constitutional interpretation." Baker, 369 U.S. at 211, 82 S.Ct. 691. However, "[w]hen a court concludes that an issue presents a nonjusticiable political question, it declines to address the merits of that issue" and "acknowledges the possibility that a constitutional provision may not be judicially enforceable." United States Dep't of Commerce v. Montana, 503 U.S. 442, 457-58, 112 S.Ct. 1415, 118 L.Ed.2d 87 (1992).
Accordingly, the political question doctrine compels us to reject the parents' invitation to have the trial court determine what level of school financing the General Assembly must provide.

D. Impossibility of Immediate Resolution
We also feel constrained to resolve any doubt over justiciability of the parents' claims against them because ongoing judicial review of the school finance system under the Education Clause raises the spectre of lengthy and potentially unending litigation. See Heineman, 731 N.W.2d at 173 ("A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution *41 and capable of present judicial enforcement.").
Here, the parents sought injunctive relief, as set forth above, and requested that the trial court retain jurisdiction over the matter until defendants implement and fund a school finance system that meets the Education Clause's alleged qualitative guarantee. Thus, "if the [c]ourt were to declare present funding levels `inadequate,' presumably the [parents] would expect the [c]ourt to evaluate, and either affirm or set aside, future appropriation decisions...." Chiles, 680 So.2d at 407. In such proceedings, "educational philosophy and needs change constantly." Campbell Cty. Sch. Dist. v. State, 907 P.2d 1238, 1258 (Wyo.1995).
Despite the parents' request for injunctive relief, their reply brief acknowledges that judicial power is limited "to the extent that a court may not order the legislature `to convene, consider issues, or enact specific legislation,' Beauprez v. Avalos, 42 P.3d 642, 648 (Colo.2002)," and states that the parents "do not ask the court to direct the General Assembly to convene or adopt specific legislation."
The declaratory relief sought by the parents would require the trial court to hear evidence of competing policy choices and prioritize financial resources, a process better suited to legislative inquiry than to judicial fact finding. Cf. Dean v. District of Columbia, 653 A.2d 307, 326 (D.C.1995)(Ferren, J., concurring in part and dissenting in part)("[T]here is quite a difference between saying a court should not engage in any legislative fact-finding and saying a court should stay away from particular legislative fact-finding. The former would be ill-advised and often impossible; the latter, on occasion, may be prudent." (emphasis in original)).
And such a declaration could create an immediate void in educational funding that the General Assembly would be required to remedy with new legislation. Such a scenario would result in an anomalous situation, where, in subsequent judicial proceedings concerning the constitutionality of such new legislation, courts would be constrained either to hold the legislation constitutional or to void it. The latter holding would force the process through yet another cycle.
The Rhode Island Supreme Court pointed out in City of Pawtucket v. Sundlun, 662 A.2d 40, 59 (R.I.1995):
[T]he absence of justiciable standards could engage the court in a morass comparable to the decades-long struggle of the Supreme Court of New Jersey.... [The] Court has struggled in its self-appointed role as overseer of education for more than twenty-one years, consuming significant funds, fees, time, effort, and court attention. The volume of litigation and the extent of judicial oversight provide a chilling example of the thickets that can entrap a court that takes on the duties of a Legislature.
As noted, the New Jersey Supreme Court has struggled for more than two decades to define what constitutes a "thorough and efficient" education under its constitution. See Abbott v. Burke, 136 N.J. 444, 643 A.2d 575 (1994); Abbott v. Burke, 119 N.J. 287, 575 A.2d 359 (1990); Abbott v. Burke, 100 N.J. 269, 495 A.2d 376 (1985); Robinson v. Cahill, 70 N.J. 464, 79 N.J. 464, 360 A.2d 400 (1976); Robinson v. Cahill, 70 N.J. 155, 358 A.2d 457 (1976); Robinson v. Cahill, 69 N.J. 449, 355 A.2d 129 (1976); Robinson v. Cahill, 69 N.J. 133, 351 A.2d 713 (1975); Robinson v. Cahill, 67 N.J. 333, 339 A.2d 193 (1975); Robinson v. Cahill, 67 N.J. 35, 335 A.2d 6 (1975); Robinson v. Cahill, 63 N.J. 196, 306 A.2d 65 (1973); Robinson v. Cahill, 62 N.J. 473, 303 A.2d 273 (1973).
We are cautioned by the experience of other courts that have held such challenges to be justiciable but then been unable to achieve prompt resolution.
The Texas Supreme Court has addressed whether its school finance system is "efficient" under its education clause six times since 1989. See Neeley v. West Orange-Cove, 176 S.W.3d 746 (Tex.2005); West Orange Cove Consol. I.S.D. v. Alanis, 107 S.W.3d 558 (Tex.2003); Edgewood Indep. Sch. Dist. v. Meno, 917 S.W.2d 717 (Tex. 1995); Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist., 826 *42 S.W.2d 489 (Tex.1992); Edgewood Indep. Sch. Dist. v. Kirby, 804 S.W.2d 491 (Tex. 1991).
Despite "issuing four decisions in this case over the past nine years," the Alabama Supreme Court conceded that "the pronouncement of a specific remedy `from the bench' would necessarily represent an exercise of the power of that branch of government charged by the people of the State of Alabama with the sole duty to administer state funds to public schools: the Alabama Legislature." Ex parte James, 836 So.2d at 816-17.
Therefore, we agree with the Nebraska Supreme Court: "The landscape is littered with courts that have been bogged down in the legal quicksand of continuous litigation and challenges to their states' school funding systems. Unlike those courts, we refuse to wade into that Stygian swamp." Heineman, 731 N.W.2d at 183.
Accordingly, we conclude that the parents' claims were properly dismissed as a nonjusticiable political question.
The judgment is affirmed.
Judge CASEBOLT and Judge TERRY concur.

*43 Appendix A

-------------------------------------------------------------------------------------------------|-------------|---------------------------------------------------------------------------------------------
| State | Case Name | Issue/Claim | Constitutional Provision | Justiciable | Reasons | Fundamental Right? |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | The general assembly shall . . . | | | |
| | | | provide for the establishment | | | |
| Colorado | | | and maintenance of a through | | | |
| | | | and uniform system of free | | | |
| | | | public schools throughout the | | | |
| | | | state . . . ." Colo. Const. art. | | | |
| | | | IX, § 2. | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | | | While it is the duty of the courts to determine what | |
| | | | | | the constitution requires, "pronouncement of a | |
| | | Review of an order | "The Legislature shall | | specific remedy from the bench would necessarily | |
| | | vacating the trial | establish, organize, and | | represent an exercise of the power of that branch of | |
| | Ex parte | court's remedy | maintain a liberal system of | | government charged by the people of the State of | |
| | James, 836 | plan requiring the | public schools throughout the | No | Alabama with the sole duty to administer state funds | |
| Alabama | So.2d 813, | legislature to | state for the benefit of the | | to public schools: the Alabama Legislature." "[W]e | |
| | 817, 819 | formulate a | children thereof between the | | now recognize that any specific remedy that the | |
| | (Ala. 2002) | constitutional | ages of seven and twenty-one | | judiciary could impose would, in order to be effective, | |
| | | system of school | years." Ala. Const. § 256 | | necessarily involve a usurpation of that power | |
| | | financing. | (version prior to Amendment | | entrusted exclusively to the Legislature." | |
| | | | 111). | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | "Intelligence and virtue being | | | |
| | | | the safeguards of liberty and | | | |
| | | | the bulwark of a free and good | | | |
| | Lake View | | government, the State shall | | | |
| | School No. | | ever maintain a general, | | | |
| | 25 v. | | suitable and efficient system of | | Unlike nonjusticiable states' constitutions which refer | |
| | Huckabee, | | free public schools means to | | to the general assembly, "the Education Article in the | |
| | 91 S.W.3d | | secure to the people the | | Arkansas Constitutional designates the State as the | |
| | 472, 484-85 | "[T]hat the current | advantage and opportunities | | entity to maintain a general, suitable, and efficient | |
| | (Ark. | school funding | of education. The specific | | system of free public schools." And it is the sole | |
| | 2002) | system is | intention of this amendment is | | function of the judiciary "to apply, interpret, define, | |
| | (quoting | unconstitutional | to authorize that in addition to | Yes | and construe all words, phrases, sentences and | |
| Arkansas | Rose v. | under the | existing constitutional or  | | sections of the [Arkansas] Constitution as | |
| | Council for | Education Article | statutory provisions the | | necessitated by the controversies before it." Further, | |
| | Better | and the Equality | General Assembly and/or | | "This court's refusal to review school funding under | |
| | Education, | provisions." | public school districts may | | our state constitution would be a complete abrogation | |
| | Inc., 790 | | spend public funds for the | | of our judicial responsibility and would work a severe | |
| | S.W.2d | | education of persons over | | disservice to the people of this state. We refuse to | |
| | 186, 208-10 | | twenty-one (21) years of age | | close our eyes or turn a deaf ear to claims of a | |
| | (Ky. | | and under six (6) years of age, | | dereliction of duty in the field of education." | |
| | 1989)). | | as may be provided by law, and | | | |
| | | | no other interpretation shall be | | | |
| | | | given to it." Ark. Const. art. | | | |
| | | | XIV. § 1. | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*44
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | "State has failed to | "Adequate provision shall be | | | |
| | Coalition for | provide its | made by law for a uniform, | | "To decide such an abstract question of `adequate' | |
| | Adequacy & | students [the] | efficient, safe, secure, and high | | funding, the courts would necessarily be required to | |
| | Fairness in | fundamental right | quality system of free public | | subjectively evaluate the Legislature's value | |
| | School | [of education] by | schools that allows students to | | judgments as to the spending priorities to be assigned | |
| | Funding, | failing to allocate | obtain a high quality education | | to the state's many needs, education being one among | |
| Florida | Inc. v. | adequate | and for the establishment, | No | them. In short, the Court would have to usurp and | |
| | Chiles, 680 | resources for a | maintenance, and operation of | | oversee the appropriations power, either directly or | |
| | So. 2d 400, | uniform system of | institutions of higher learning | | indirectly, in order to grant the relief sought by | |
| | 402, 406-07 | free public schools | and other public education | | Plaintiffs." Thus, "We conclude that here, especially in | |
| | (Fla. | as provided for in | programs that the needs of the | | view of our obligation to respect the separation of | |
| | 1996). | the Florida | people may require." Fla. | | powers doctrine, an sufficient showing has been | |
| | | Constitution." | Const. art. IX. 1(a). | | made to justify judicial intrusion." | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | Idaho | | | | | |
| | Schools for | | | | In addressing the "thorough" claim, the court stated: | |
| | Equal | | | | "Mindful that . . . this Court is not well equipped to | |
| | Educational | | | | legislate `in a turbulent filed of social, economic and | |
| | Opportunity, | | | | political policy' . . . we decline to accept the | |
| | Inc. v. | "[T]hat the current | "The stability of a republican | | respondents' argument that the other branches of | |
| | Evans, 850 | method of funding | form of government depending | | government be allowed to interpret the constitution for | |
| | P.2d 724, | the public schools | mainly upon the intelligence of | | us. That would be an abject abdication of our role in | |
| | 728, 734 | does not provide | the people, it shall be the duty | | the American system of government." "Passing on the | |
| Idaho | (Idaho | either a `uniform' | of the legislature of Idaho, to | Yes | constitutionality of statutory enactments, even | |
| | 1993) | system or a | establish and maintain a | | enactment with political overtones, is a fundamental | |
| | (quoting | `thorough' system | general, uniform and through | | responsibility of the judiciary." Further, "Balancing | |
| | Thompson | and, further, | system of public, free common | | our constitutional duty to define the meaning of. . . | |
| | v. | violates the equal | schools." Idaho Const. art. IX, | | thoroughness . . . with the political difficulties of that | |
| | Engelking, | protection clause." | § 1. | | task has been made simpler for this Court because | |
| | 537 P.2d | | | | the executive branch of the government has already | |
| | 635, 640 | | | | promulgated educational standards." | |
| | (Idaho | | | | | |
| | 1975)). | | | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*45
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | Lewis E. v. | | | | "[w]hat constitutes a `high quality' education cannot | |
| | Spagnolo, | | | | be ascertained by any judicially discoverable or | |
| | 710 N.E.2d | | "The State shall provide for an | | manageable standards and that the constitution | |
| | 798, 802 |"[Whether the | efficient system of high quality | | provides no principled basis for a judicial definition of | |
| | (Ill. 1999) | plaintiffs may | public educational institutions | | `high quality': `It would be a transparent conceit to | |
| | (quoting | state a cause of | and services, Education in | | suggest that whatever standards of quality courts | |
| Illinois | Committee | action under the | public schools through the | No | might develop would actually be derived from the | |
| | for | education article | secondary level shall be free. | | constitution in any meaningful sense. Nor is | |
| | Educational | of our state | there may be such other free | | education a subject within the judiciary's field of | |
| | Rights v. | constitution." | education as the General | | expertise, such that a judicial role in giving content to | |
| | Edgar, 672 | | Assembly provides by law." Ill | | the education guarantee might be warranted. Rather, | |
| | N.E.2d | | Const. art. X, § 1. | | the question of educational quality is inherently one of | |
| | 1178, 1191 | | | | policy involving philosophical and practical | |
| | (Ill. 1996)). | | | | considerations that call for the exercise of legislative | |
| | | | | | and administrative discretion." | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | "Local public schools under the | | | |
| | | | general supervision of the state | | | |
| | | | board of education shall be | | "The judiciary interprets, explains, and applies the law | |
| | | | maintained, developed and | | to controversies concerning rights, wrongs, duties, | |
| | | | operated by locally elected | | and obligations arising under the law and has had | |
| | | "[P]laintiffs, | boards. When authorized by | | imposed upon it the obligations of interpreting the | |
| | | including unified | law, such boards may make | | Constitution and of safeguarding the basic rights | |
| | Unified | school districts, | and carry out agreements for | | reserved thereby to the people. In this sphere of | |
| | School Dist. | taxpayers, and | cooperative operation and | | responsibility, courts have no power to overturn the | |
| | No. 229 v. | students, | administration of educational | | law enacted by the legislature within constitutional | |
| | State, 885 | challenge the | programs under the general | Yes | limitations, even though the law may be unwise, | |
| Kansas | P.2d 1170, | constitutionality of | supervision of the state board | | impolitic, or unjust. The remedy in such a case lies | |
| | 1172-73, | the School District | of education, but such | | with the people through the political process." "It is | |
| | 1186 (Kan. | Finance and | agreements shall be subject to | | well settled that courts should not substitute judicial | |
| | 1994). | Quality | limitation, change or | | judgment for educational decisions and standards. . . | |
| | | Performance Act." | termination by the legislature." | | Hence, the court will not substitute its judgment of | |
| | | | Kan. Const art. VI, § 5, AND | | what is `suitable,' but will utilize as a base the | |
| | | | "The legislature shall make | | standards enunciated by the legislature and the state | |
| | | | suitable provisions for finance of | | department of education." | |
| | | | the educational interests of the | | | |
| | | | state." Kan. Const. art. VI, § | | | |
| | | | 6(b). | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*46
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | "[W]hether the | | | | |
| | Rose v. | Kentucky General | | | "[W]e are asked  based solely on the evidence in the | |
| | Council for | Assembly has | | | record before us  if the present system of common | |
| | Better | complied with its | "The General Assembly shall, | | schools in Kentucky is `efficient' in the constitutional | |
| | Education, | constitutional | by appropriate legislation, | Yes | sense. It is our sworn duty, to decide such questions | Yes |
| Kentucky | Inc., 790 | mandate to | provide for an efficient system | | when they are before us by applying the constitution." | |
| | S.W.2d | `provide an | of common schools throughout | | in contrast, "To allow the General Assembly . . . to | |
| | 186, 189, | efficient system of | the State." Ky. Const. § 183. | | decide whether its actions are constitutional is | |
| | 209 (Ky. | common schools | | | literally unthinkable." | |
| | 1989) | throughout the | | | | |
| | | state." | | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | "[I]t shall be the duty of | | | |
| | | | legislatures and magistrates. . | | | |
| | | | . to cherish the interests of | | "if the mandate of the Constitution is not met, or if a | |
| | | | literature and the sciences, and | | statutory structure which worked at one time no | |
| | | | all seminaries of them; | | longer works, the responsibility for the failure to | |
| | McDuffy v. | | especially the university at | | educate falls squarely on the Commonwealth, | |
| | Secretory, | | Cambridge, public schools and | | specifically the `legislatures and magistrates.' They | |
| | 615 N.E.2d | "[T]he State's | grammar schools in the towns; | | may delegate, but they may not abdicate, their | |
| | 516, 517, | school-financing | to encourage private societies | | constitutional duty. `Without in any way attempting to | |
| | 550, 553, | system effectively | and public institutions, | | invade the rightful province of the Legislature to | |
| | 555 (Mass. | denies them the | rewards and immunities, for | | conduct its own business, we have the duty . . . to | |
| | 1993) | opportunity to | the promotion of agriculture, | Yes | adjudicate a claim that a law and the actions | |
| Massachusetts | (quoting | receive an | arts, sciences, commerce, | | undertaken pursuant to that law conflict with [or fall | |
| | Colo v. | adequate | trades, manufactures, and a | | short of] the requirements of the Constitution." The | |
| | Treasurer, | education in the | natural history of this country; | | court then articulated "broad guidelines" and | |
| | 392 N.E.2d | public schools in | to countenance and inculcate | | assumed "that the Commonwealth will fulfill its duty | |
| | 1195, 1197 | their | the principles of humanity and | | to remedy the constitutional violations that we have | |
| | (Mass. | communities." | general benevolence, public | | identified." The court noted: "we leave it to the | |
| | App.Ct. | | and private charity, industry | | magistrates and the Legislatures to define the precise | |
| | 1979)). | | and frugality, honesty and | | nature of the task which they face in fulfilling their | |
| | | | punctuality in their dealings; | | constitutional duty to educate our children today, and | |
| | | | sincerity, good humour, and all | | in the future." | |
| | | | social affections, and generous | | | |
| | | | sentiments among the people." | | | |
| | | | Mass. Const. pt. 11(C)(5), § 2. | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*47
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | "[I]t in the goal of the people to | | | |
| | | | establish a system of education | | | |
| | | | which will develop the full | | | |
| | | | educational potential of each | | | |
| | | | person. Equality to | | | |
| | | | educational opportunity is | | | |
| | | | guaranteed to each person of | | | Yes: "In this case, the |
| | | | the state. | | | requirement that the |
| | | | (2) The state recognizes the | | | Legislature shall provide |
| | | | distinct and unique cultural | | | a basic system of free |
| | Columbia | | heritage of the American | | | quality public schools, |
| | Falls | "[T]he State has | Indiana and a committed in its | | "Since the Public Schools Clause in non-self-executing, | must be read in |
| | Elementary | acted | educational goals to the | | it presents a political question which, in | conjunction with Section |
| | School | unconstitutionally | preservation of their cultural | | the first instance, is directed to the Legislature and is | 1 of Article X, which |
| | District No. | in administering | integrity. | | non-justicable. That determination, however, does | guarantees a right to |
| Montana | 6 v. State, | and funding | (3) The legislature shall provide | Yes | not end the inquiry. As here, (1) once the legislature | education," Further, the |
| | 109 P.3d | Montana's | a basic system of the guilty | | has acted, or `executed,' a provision (2) that implicates | court noted: `An the final |
| | 257, 259-61 | constitutionally-mandated | public elementary and | | individual constitutional rights, courts can determine | guardian and protector of |
| | (Mont. | public | secondary schools. The | | whether that enactment fulfills the Legislature's | the right to education, it |
| | 2005). | school system." | legislature may provide such | | constitutional responsibility." | is incumbent upon the |
| | | | other educational institutions, | | | court to assure that the |
| | | | public libraries, and | | | system enacted by the |
| | | | educational programs as it | | | Legislature enforces, |
| | | | deema desirable. It shall fund | | | protects and fulfills the |
| | | | and distribute in an equitable | | | right." |
| | | | manner to the school districts | | | |
| | | | the state's share of the cost of | | | |
| | | | the basic elementary and | | | |
| | | | secondary school system" | | | |
| | | | Mont Const. art. X. § 1. | | | |
| | | | | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*48
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | | | "The Nebraska Constitution commits the issue of | |
| | | | | | providing free instruction to the Legislature and fails | |
| | | | | | to provide judicially discernible and manageable | |
| | | | | | standards for determining what level of public | |
| | | | | | education the Legislature must provide." In | |
| | | | | | discussing the second prong of Baker, the court noted | |
| | Nebraska | | "The Legislature shall provide | | that the "people rejected a recent amendment that | |
| | Coalition for | | for the free instruction in the | | would have imposed qualitative standards on the | |
| | Educational | Plaintiffs `alleged | common schools of this state of | | Legislature a duty to provide public education." That | |
| | Equity & | that the funding | all persons between the ages of | | amendment `would have made a "through and | |
| | Adequacy v. | system does not | five and twenty-one years. The | | efficient education' . . . the `paramount duty' of the | |
| Nebraska | Heineman, | provide sufficient | Legislature may provide for the | No | state." The court also noted that the "framers of the | |
| | 731 N.W.2d | funds for an | education of other persons in | | 1875 constitution intentionally omitted any language | |
| | 164, 169, | `adequate' and | educational institutions owned | | . . that would have placed restrictions or qualitative | |
| | 171, 180, | `quality' | and controlled by the state or a | | standards on the Legislature's duties regarding | |
| | 183 (Neb. | education.' | political subdivision thereof.' | | education' by rejecting the `through and efficient' | |
| | 2007). | | Neb. Const. art. VII. §1. | | language found in many other states constitutions. | |
| | | | | | Thus, the court stated. `We interpret the paucity of | |
| | | | | | standards in the free instruction clause as the | |
| | | | | | framers intent to commit the determination of | |
| | | | | | adequate school finding solely to the Legislature's | |
| | | | | | discretion, greater resources, and expertise. | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | | | The court interpreted the Education Clause and | |
| | | | "Knowledge and learning | | determined that there is a duty `that the State provide | |
| | | | generally diffused through a | | an education to all its citizens and that it support all | |
| | | | community, being essential to | | public schools.' And this duty `extends beyond mere | |
| | | | the preservation of a free | | reading, writing and arithmetic. It also includes broad | |
| | | Does the N.H. | government; and spreading the | | educational opportunities needed in today's society to | |
| | Claremont | Constitution | opportunities and advantages | | prepare citizens for their role as participants and as | |
| | School | impose a duty on | of education through the | | potential competitors in today's marketplace of idea.' | |
| New | District v. | the State to | various parts of the country. | Yes | However, the court went on to state. "We do not define | |
| Hampshire | Governor, | provide | being highly conducive to | | the parameters of the education mandated by the | |
| | 635 A.2d | constitutionally | promote this end, it shall be | | constitution as the task is, in the first instance, for | |
| | 1375, 1381 | adequate | the duty of the legislators and | | the legislature and the Governor.' And We are | |
| | (N.H. 1993) | education? | magistrates, in all future | | confident that the legislature and the Governor will | |
| | | | periods of this government, to | | fulfill their responsibility with respect to defining the | |
| | | | cherish the interest of | | specifies of and the appropriate means to provide | |
| | | | literature and the sciences . . . | | through public education, the knowledge and learning | |
| | | | "N.H. Comst. pt. II, art. 83. | | essential to the preservation of a free government.' | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*49
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | "Plaintiffs contend | | | | |
| | | that recently-enacted | "The Legislature shall provide | | The issue of justiciability was not specifically | |
| | | legislation, the | for the maintenance and | | addressed. However the court noted that while | |
| | Abott v. | Comprehensive | support of a thorough and | | deference should be given to legislative content and | |
| | Barke, 693 | Educational | efficient system of free public | | performance standards, it is still the courts' duty "to | Throughout the opinion, |
| New Jersey | A.2d 417, | Improvement and | schools for the instruction of | Yes | determine whether the new approach encompassing | the court refers to |
| | 420, 428 | Financing Act of | all the children in the State | | content and performance standards, together with | education as a |
| | (N.J. 1997). | 1996, fails to | between the ages of five and | | funding measures, comports with the constitutional | constitutional right." |
| | | assure them a | eighteen years." N.J. Const. | | guarantee of a thorough and efficient education of all | |
| | | thorough and | art. VII, § 4. | | New Jersey school children. The standards themselves | |
| | | efficient | | | do not ensure any substantive level of achievement." | |
| | | education." | | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | That the State's | | | | |
| | | public school | | | | |
| | Campaign | financing system | "The legislature shall provide | | | |
| | for Fiscal | is unconstitutional | for the maintenance and | | Whether the claim ws justiciable was not argued, nor | |
| | Equity, Inc. | under the | support of a system of free | | addressed specifically by the court. However, the | |
| New York | v. State, | Education Article | common schools, wherein all | Yes | court noted: "We conclude that a duty exists and that | |
| | 655 N.E.2d | of the State | the children of this state may | | we are responsible for adjudicating the nature of that | |
| | 661, 665 | Constitution and | be educated." N.Y. Const. art. | | duty." | |
| | (N.Y. 1995). | the Equal | XI, § 1. | | | |
| | | Protection Clause. | | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | "The people have a right to the | | | |
| | | | privilege of education, and it is | | | |
| | | | the duty of the State to guard | | | |
| | | "[T]hat [plaintiffs] | and maintain that right." N.C. | | | |
| | | have a right to | Const art. I, § 15. And "The | | | |
| | | adequate | General Assembly shall provide | | | "The right to a free public |
| | Leandro v. | educational | by taxation and otherwise for a | | "When a government action is challenged as | education is explicitly |
| | State, 488 | opportunities | general and uniform system of | Yes | unconstitutional, the courts have a duty to detemine | guaranteed by the North |
| North Carolina | S.E.2d 249, | which is being | free public schools, which shall | | whether that action exceeds constitutional limits." | Carolina Constitution. . . |
| | 252-54 | denied them by | be maintained at lease nine | | | ." |
| | (N.C. 1997). | defendants under | months in every, and | | | |
| | | the current school | wherein equal opportunities | | | |
| | | funding system." | shall be provided for all | | | |
| | | | students." N.C. Const. art. IX, | | | |
| | | | § 2(1). | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*50
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | | | "Under the long-standing doctrine of judicial review, it | |
| | | | "The general assembly shall | | is our sworn duty to determine whether the General | |
| | | | make such provisions, by | | Assembly has enacted legislation that is constitutional | |
| | | | taxation, or otherwise, as, with | | . . . We are aware that the General Assembly has the | |
| | | | the income arising from the | | responsibility to enact legislation and that such | |
| | DeRolph v. | Plaintiffs sought "a | school trust fund, will secure a | | legislation is presumptively valid . . . However, this | |
| | State, 677 | determination that | thorough and efficient system | | does not mean that we may turn a deaf ear to any | |
| | N.E.2d 733, | Ohio's system of | of common schools throughout | Yes | challenge to laws passed by the General Assembly. | No |
| Ohio | 734, 737 | funding public | the State; but, no religious or | | The presumption that laws are constitutional is | |
| | (Ohio | education is | other sect, or sects, shall ever | | rebuttable. . . . The judiciary was created as part of a | |
| | 1967). | unconstitutional" | have any exclusive right to, or | | system of checks and balances. We will not dodge our | |
| | | | control of, any part of the | | responsibility by asserting that this case involves a | |
| | | | school funds of this state." | | nonjusticiable political question. To do so is | |
| | | | Ohio Const. art. VI, § 2. | | unthinkable. We refuse to undermine our role as | |
| | | | | | judicial arbiters and to pass our responsibilities onto | |
| | | | | | the lap of the General Assembly." | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | "Legislature shall establish | | | |
| | | | and maintain a system of free | | | |
| | | | public schools wherein all the | | | |
| | | | children of the State may be | | "The legislature has the exclusive authority to declare | |
| | | "[B]y inadequately | educated." Okla. Const. art. | | the fiscal policy of Oklahoma | |
| | | funding education | XIII, § 1. | | constitutional prohibitions. . . . The plaintiffs have | |
| | Oklahoma | [defendants are . . | "Provisions shall be made for | | failed to provide us with any applicable limitations. | |
| | Education | . depriving | the establishment and | | The plaintiffs are attempting to circumvent the | |
| | Ass'n v. | Oklahoma school | maintenance of a system of | | legislature process by having this Court interfere with | |
| | State, 158 | children of a | public schools, which shall be | No | and control the Legislature's domain of making fiscal-policy | |
| Oklahoma | P.3d 1058, | constitutional | open to all the children of the | | policy decisions and of setting educational policy by | |
| | 1062, 1066 | right to a uniform | state and free from sectarian | | imposing mandates on the Legislature and by | |
| | (Okla. | opportunity to | control; and said schools shall | | continuing to monitor and oversee the Legislature. To | |
| | 2007). | receive a basic, | always be conducted in | | do as the plaintiffs ask would require this Court to | |
| | | adequate | English: Provided, that nothing | | invade the Legislature's power to determine policy. | |
| | | education." | herein shall preclude the | | This we are constitutionally prohibited from doing." | |
| | | | teaching of other languages in | | | |
| | | | said public schools." Okla. | | | |
| | | | Const. art V, § 1. | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*51
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | "That the General | | | Because of "a lack of judicially manageable standards | |
| | | Assembly violated | | | for resolving the instant claims, . . . it would be | |
| | | the Pennsylvania | | | impossible to resolve the claims without making an | |
| | | Constitution by | | | initial policy determination of a kind which is clearly | |
| | | failing to provide | | | of legislative and not judicial, discretion." Thus, | |
| | | adequate funding | "The General Assembly shall | | "Even were this Court to attempt to define the specific | |
| | Marrero v. | for the | provide for the maintenance | | components of a `through and efficient education to | |
| | Commonwealth | Philadelphia | and support of a through and | | a manner which would foresee the needs of the future, | |
| Pennsylvania | 739 A.2d 110, | School District in | efficient system of public | No | the only judicially manageable standard this court | |
| | 111-113 | violation of [the | education to serve the needs of | | could adopt would be the rigid rule that each pupil | |
| | (Pa. 1999), | obligation] to | the Commonwealth." Pa. | | must receive the same dollar expenditures . . . | |
| | | provide for the | Const. art. Ill. § 14. | | [f]lowers, . . . expenditures are not the exclusive | |
| | | maintenance and | | | yardstick of educational quality, or even of | |
| | | support of a | | | educational quantity . . . The educational product is | |
| | | thorough and | | | dependent upon many factors, including the wisdom | |
| | | efficient system of | | | of the expenditures as well as the efficiency and | |
| | | public education." | | | economy with which available resources are utilized." | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | City of | | | | | |
| | Pawtucket | | "The diffusion of knowledge as | | | |
| | v. Sundown | | well as if virtue among the | | "[P]laintiffs have asked the judicial branch to enforce | |
| | 662 A.2d | Plaintiffs "sought | people, being essential to the | | policies for which there are the judicially manageable | |
| | 40, 58-59 | a declaratory | preservation of their rights and | | standards." "[I]t is not within the power or province of | |
| | (R.I. 1995) | judgment that the | liberties, it shall be the duty | | members of the Judiciary to advance their own | |
| | (quoting | state a method of | of the general assembly to | | personal wishes or to implement their own personal | |
| Rhode Island | Hornbeck v. | funding public | promote public schools and | No | notions of farmers under the guise of constitutional | |
| | Somerset | education was | public libraries, and to adopt | | interpretation. The quantity and quality of educational | |
| | County | violative of the | all means which it may deem | | opportunities to be made available to the State's | |
| | Board of | Rhode Island | necessary and proper to secure | | public school children is a determination committed | |
| | Education, | Constitution." | to the people the advantages | | to the legislature or to the people . . . through | |
| | 458 A.2d | | and opportunities of education | | adoption of an appropriate amendment to the State | |
| | 758, 790 | | and public library services." | | Constitution." | |
| | (R.I. 1983) | | R.I. Const. art XII. § 1. | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | "Essentially they | "The General Assembly shall | | Relying on the principle that "it is the duty of this | |
| | Abbeville | allege that the | provide for the maintenance | | Court to interpret and declare the meaning of the | |
| | County | system is | and support of a system of free | | Constitution, "the court defined the "minimally | |
| | School Dist. | underfunded, | public schools open to all | | adequate education required by our Constitution." | |
| | v. State, | resulting of the | children in the State and shall | | Further, the court stated: "We recognize that we are | |
| South Carolina | 515 S.E.2d | state | establish, organize and support | Yes | not experts in education, and we do not intend to | |
| | 535, 537, | Constitution's | such other public institution | | dictate the programs utilized in our public schools | |
| | 540 (S.C. | education clause | of learning, as may be | | instead, we have defined, within deliberately broad | |
| | 1999) | | desirable." S.C. Const. art. XI, | | parameters, the outlines of the constitution's | |
| | | | § 3. | | requirement of minimally adequate education." | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*52
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | Neeley v. | | | | | |
| | West | "[T]hat the public | | | The Education Clause `imposes on the legislature an | |
| | Orange-Cove | school system | "A general diffusion of | | affirmative duty to establish and provide for the public | |
| | Consolidate | cannot achieve `[a] | knowledge being essential to | | free schools." However, this duty "is not committed | |
| | d | general diffusion | the preservation of the liberties | | unconditionally to the legislature a discretion, but | |
| Texas | Independen | of knowledge as | and right of the people, it | | instead is accompanied by standards." i.e. "suitable," | |
| | t School | required by article | shall be the duty of the | | "essential," and "efficient." Thus, while "the | |
| | District 176 | VII, section I of | Legislature of the State to | Yes | Legislature has the sole right to decide how to meet | |
| | S.W.3d | the Texas | establish and make suitable | | the standards . . . the Judiciary has the final | |
| | 746, 752, | Constitution | provision for the support and | | authority to determine whether they have been met." | |
| | 776-77, (Tx. | because the | maintenance of an efficient | | | |
| | 2005) | system is | system of public free schools." | | | |
| | | underfunded." | Tex. Const. art. VII, § 1. | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | | | "Our revice of the record and the briefs compels us to | |
| | | | | | conclude that the Legislature, the Attorney General, | |
| | | "[T]hat the State's | | | school districts and the people of this State are | |
| | Seattle | reliance on special | "It is the paramount duty of the | | uncertain as to the meaning and application of [the | Yes "all children residing |
| | School Dist. | excess levy | state to make ample provision | | education clause]. They, as well as the impacted | within the State's borders |
| | No. 1 v. | funding for | for the education of all children | | public school children, will benefit from a clarification | have a "right" to be amply |
| Washington | State, 585 | discharging its | reading within its borders, | Yes | of the applicable constitutional and statutory | provided with an |
| | P.2d 71, 80, | the education of | without distinction or | | provisions." And "Deciding whether a matter has in | education. That "right" is |
| | 84 (Wash. | resident children | preference on account of race, | | any measure been committed by the Constitution to | constitutionally |
| | 1978). | was | color, caste, or sex." Wash. | | another branch of government, or whether the action | paramount and must be |
| | | unconstitutional." | Const. art IX, § 1. | | of that branch exceeds wherever authority has been | achieved through a |
| | | | | | committed, in itself a delicate exercise in | "general and uniform |
| | | | | | constitutional interpretation and is a responsibility of | system of public school." |
| | | | | | this Court as ultimate interpreter of the Constitution." | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | That are system | | | | |
| | | for functioning | | | | |
| | | public schools | | | | |
| | | violate West | | | After reviewing decisions from other jurisdictions, | |
| | | Virginia | | | noting the deference courts give to legislatively | |
| | Packey v. | Constitution by | "The legislature shall provide, | | promulgated education policies but stating that "these | Yes "education is a |
| | Kelly, 255 | denying plaintiffs | by general law, for a thorough | | jurisdictions have not hesitated to examine legislature | fundamental |
| West Virginia | S.E.2d 859, | the "through and | and efficient system of free | Yes | performance of the [constitutional] mandate, and we | constitutional right in |
| | 870 (W.Va. | efficient" | schools." W. Va. Const. art. | | think properly so, even as they recite that courts are | this State." |
| | 1979). | education required | XII, § 1. | | not concerned with the wisdom or policy of the | |
| | | and by denying | | | legislation." | |
| | | them equal | | | | |
| | | protection of the | | | | |
| | | law. | | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*53
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | "The legislature shall provide | | | |
| | | | by law for the establishment of | | | |
| | | | district schools, which shall be | | | |
| | | | as nearly uniform as | | "This court on numerous occasions has interpreted | |
| | | "[W]hether the | practicable; and such schools | | the state constitution to find that assessing the | |
| | | state school | shall be free and without | | constitutionality of the state school finance system is | Yes: "We further hold |
| | Vincent v. | finance system is | charge for tuition to all | | within its province." And "We are satisfied that the | that Wisconsin students |
| | Voight, 614 | unconstitutional | children between the ages of 4 | | issues presented to us in this case are appropriate for | have a fundamental right |
| | N.W.2d | under . . . the | and 20 years; and no sectarian | Yes | decision by this court in the exercise of out | to an equal opportunity |
| Wisconsin | 388, 396 & | uniformity clause | instruction shall be allowed | | constitutional role. This is an area where all three of | for a sound basic |
| | n.2 (Wis. | of the education | therein; but the legislature by | | the co-equal branches of state government share | education." |
| | 2000). | article; and . . . | law may, for the purpose of | | power and authority consistent with the Wisconsin | |
| | | the Equal | religious instruction outside | | Constitution. It is indeed `a delicate exercise in | |
| | | Protection Clause." | the district schools, authorize | | constitutional interpretation.'" | |
| | | | the release of students during | | | |
| | | | regular school hours." Wis. | | | |
| | | | Const. art, X, § 3. | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|
| | | | "The legislature shall provide | | | |
| | | | for the establishment and | | | |
| | | | maintenance of a complete and | | | |
| | | | uniform system of public | | | |
| | | | instruction, embracing free | | | |
| | | | elementary schools of every | | | |
| | | "[C]ertain | needed kind and grade, a | | | |
| | | components of the | university with such technical | | "Constitutional provisions imposing an affirmative | |
| | Campbell | Wyoming public | and professional departments | | mandatory duty upon the legislature are judicially | |
| | County | school finance | as the public good may require | | enforceable in protecting individual rights, such as | |
| | School | system were | and the means of the state | | educational rights. . . . Although this court has said | "The fundamental right of |
| | District v. | unconstitutional | allow, and such other | | the judiciary will not encroach into the legislative field | education expressly |
| Wyoming | State, 907 | under the Equal | institutions as may be | | of policy making, as the final authority on | recognized by the |
| | P.2d 1238, | Protection Section | necessary." Wyo. Const. art. 7, | Yes | constitutional questions the judiciary has the | Wyoming Constitution. . |
| | 1243-44 | of the Wyoming | § 1. "The legislature shall | | constitutional duty to declare unconstitutional that | . ." |
| | 1257, 1264 | Constitution. . . | make such further provision by | | which transgresses the state constitution. . . . When | |
| | (Wyo. | and the Education | taxation or otherwise, as with | | the legislature's transgression is a failure to act, our | |
| | 1995). | Article of the | the income arising from the | | duty to protect individual rights include compelling | |
| | | Wyoming | general school fund will create | | legislative action required by the constitution." | |
| | | Constitution." | and maintain a thorough and | | | |
| | | | efficient system of public | | | |
| | | | schools, adequate to the proper | | | |
| | | | instruction of all youth of the | | | |
| | | | state, between the ages of six | | | |
| | | | and twenty-one years. . . ." | | | |
| | | | Wyo. Const. art. 7, § 9. | | | |
|----------------|---------------|---------------------------|------------------------------------|-------------|--------------------------------------------------------------|-----------------------------|

*54 Appendix B

State Case Name Definition of Thorough
-------------------------------------------------------------------------------------------------------------------------------
Idaho Idaho Schools for Equal Educational "Balancing our constitutional duty to define the meaning of
 Opportunity v. Evans, 850 P.2d 724, . . . thoroughness . . . with the political difficulties of that
 734 (Idaho 1993). task has been made simpler for this Court because the
 executive branch of the government has already promulgated
 educational standards . . . . We have examined those
 standards carefully and now hold that, under art. 9, § 1, the
 requirements for school facilities, instructional programs and
 textbooks, and transportation systems as contained in those
 regulations presently in effect, are consistent with our view
 of throughness."
-------------------------------------------------------------------------------------------------------------------------------
Minnesota Associated Schools v. School District "`[T]he Legislature shall make such provisions . . . as will
 No. 83, 142 N.W. 325, 327 (Minn.1913) secure a thorough and efficient system of public schools
 (quoting Minn. Const. art. 8, § . . . .' The object of these provisions is `to insure a regular
 (1857), and Board of Education v. method throughout the state, whereby all may be enabled to
 Moore, 17 Minn. 412, 416 (1871)). acquire an education which will fit them to discharge intelligently
 their duties as citizens of the republic.'"
-------------------------------------------------------------------------------------------------------------------------------
Montana McNair v. School District No. 1, 288 "What, then constitutes a `thorough' system of education in
 P. 188, 190 (Mont.1930). our public schools? . . . [I]t is clear that the solemn mandate
 of the Constitution is not discharged by the mere
 training of the mind; mentality without physical well-being
 does not make for good citizenship  the good citizen, the
 man or woman who is of the greatest value to the state, is
 the one whose every faculty is developed and alert."
-------------------------------------------------------------------------------------------------------------------------------
New Jersey Abbott v. Burke, 693 A.2d 417, 425 The legislature promulgated and adopted substantive standards
 (N.J.1997). that define a through and efficient education: "The
 substantive requirements are specified by the core curriculum
 content standards (content standards or standards), and
 are intended to implement the throughness component of
 the constitutionally mandated thorough and efficient education."
 The court deferred to these standards.
-------------------------------------------------------------------------------------------------------------------------------
New Jersey Robinson v. Cahill, 287 A.2d 187, 211 "The word `through' in the Education Clause connotes in
 (N.J.Super.Ct. Law Div.1972). common meaning the concept of completeness and attention
 to detail. It means more than simply adequate or minimal."
-------------------------------------------------------------------------------------------------------------------------------
Ohio DeRolph v. State, 677 N.E.2d 733, 741 The Ohio Supreme Court "construed the words `through
 (Ohio. 1997) (quoting Miller v. Korns, and efficient in light of the constitutional debates and history
 140 N.E. 773, 776 (Ohio 1923)). surrounding them." The court stated: "This declaration
 is made by the people of the state. It calls for the upbuilding
 of a system of schools throughout the state, and the
 attainment of efficiency and thoroughness in that system is
 thus expressly made a purpose, not local, not municipal, but
 state-wide. With this very purpose in view, regarding the
 problem as a state-wide problem, the sovereign people made
 it mandatory upon the General Assembly to secure not
 merely a system of common schools, but a system thorough
 and efficient throughout the state. A thorough system could
 not mean one in which part or any number of the school
 districts of the state were starved for funds. An efficient
 system could not mean one in which part or any number of
 the school districts of the state lacked teachers, buildings, or
 equipment."
-------------------------------------------------------------------------------------------------------------------------------
West Virginia Pauley v. Kelly, 255 S.E.2d 859, 877 "It develops, as best the state of education expertise allows,
 (W.Va.1979). the minds, bodies and social morality of its charges to
 prepare them for useful and happy occupations, recreation
 and citizenship, and does so economically."
-------------------------------------------------------------------------------------------------------------------------------
Wyoming Campbell County School District v. To define "thorough," the Wyoming Supreme Court relied on
 State, 907 P.2d 1238, 1258-59 (Wyo. (1) statements by its territorial governors' (2) statutes enacted
 1995). by its legislature setting the framework for defining a
 proper education; and (3) definitions of the words in the
 state constitution's clauses set at the time of ratification.
 The court stated: "[W]e can define `a through and efficient
 system of public schools adequate to the proper instruction
 of the state's youth's as an organization forming a network for
 serving the common purpose of public schools which organization
 is marked by full detail or complete in all respects and
 productive without waste and is reasonably sufficient for the
 appropriate or suitable teaching/education/learning of the
 state's school age children."
-------------------------------------------------------------------------------------------------------------------------------

*55